UNITED STATES, Appellee

v.

James H. HILL, First Lieutenant
U.S. Army, Appellant

No. 04-0470

Crim. App. No. 20000208

United States Court of Appeals for the Armed Forces

Argued October 12, 2005

Decided January 6, 2006

EFFRON, J., delivered the opinion of the Court, in which GIERKE, C.J., and CRAWFORD, BAKER, and ERDMANN, JJ., joined.


Counsel


For Appellant:  Captain Eric D. Noble (argued); Colonel Mark Cremin, Lieutenant Colonel Mark Tellitocci, Major Allyson G. Lambert, and Captain Charles L. Pritchard Jr. (on brief); Colonel John T. Phelps II.


For Appellee:  Captain Isaac C. Spragg (argued); Colonel Steven T. Salata, Lieutenant Colonel Mark L. Johnson, and Major Natalie A. Kolb (on brief); Captain Janine Felsman.



Military Judges:  Kenneth D. Pangburn and James L. Pohl


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

United States v. Hill, No. 04-0470/AR

Judge EFFRON delivered the opinion of the Court.

At a general court-martial composed of a military judge sitting alone, Appellant was convicted, pursuant to his pleas, of seven specifications each of dereliction of duty and conduct unbecoming an officer, in violation of Articles 92 and 133, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 933 (2000). He was sentenced to dismissal, a reprimand, a $2,500.00 fine, and contingent confinement for ninety days if the fine was not paid. The record indicates timely payment of the fine. Prior to taking action, the convening authority ordered a post-trial session under Article 39(a), 10 U.S.C. § 839(a) (2000), to consider matters pertinent to the present appeal. A military judge who did not preside at trial conducted the post-trial Article 39(a) session.[*] Following the post-trial Article 39(a) session, the convening authority approved the results of trial. The Court of Criminal Appeals affirmed in an unpublished opinion. United States v. Hill, No. ARMY 20000208 (A. Ct. Crim. App. Apr. 12, 2004).

On Appellant's petition, we granted review of the following issues:

> I.   WHETHER THE MILITARY JUDGE ERRED WHEN
>      HE CONSIDERED APPELLANT'S BATTALION

---

[*] For purposes of this opinion, we shall refer to the military judge who presided during the trial as the "trial judge." We shall refer to the military judge who presided at the post-trial Article 39(a) session as the "post-trial judge."

2

> COMMANDER'S IMPROPER SENTENCING
> TESTIMONY, "IF I WAS SITTING IN THAT
> PANEL OVER THERE AS A JUROR WOULD I
> ALLOW HIM [APPELLANT] TO REMAIN IN THE
> ARMY?  NO --"

II. WHETHER THE MILITARY JUDGE AND THE ARMY
COURT OF CRIMINAL APPEALS ERRED IN
HOLDING THAT MILITARY RULE OF EVIDENCE
606(b) PRECLUDES CONSIDERATION OF THE
MILITARY JUDGE'S POST-TRIAL STATEMENT,
"I WAS CONSIDERING KEEPING [APPELLANT]
UNTIL HIS COMMANDER SAID HE DID NOT
WANT HIM BACK."

For the reasons discussed below, we affirm.

## I.  BACKGROUND

### A.  CONSIDERATION OF REHABILITATIVE POTENTIAL DURING SENTENCING

During a sentencing proceeding, it is appropriate to consider the rehabilitative potential of an accused.  See United States v. Griggs, 61 M.J. 402, 407 (C.A.A.F. 2005).  Under Rule for Courts-Martial (R.C.M.) 1001(b)(5), the prosecution may present opinion testimony during sentencing as to potential of an accused to be "restored . . . to a useful and constructive place in society," with certain restrictions.  Such testimony "is limited to whether the accused has rehabilitative potential and to the magnitude or quality of any such potential."  R.C.M. 1001(b)(5)(D).  The prosecution's witness "may not offer an opinion regarding the appropriateness of a punitive discharge or

3

whether the accused should be returned to the accused's unit."
Id.

The defense, which has broad latitude to present evidence in extenuation and mitigation under R.C.M. 1001(c), is not subject to the limitations of R.C.M. 1001(b)(5).  See Griggs, 61 M.J. at 410.  If the defense, however, elicits evidence that could not be introduced by the prosecution under R.C.M. 1001(b)(5), the door may be opened for the prosecution to present such evidence in rebuttal.  See id.

B.  EVIDENCE PRESENTED DURING SENTENCING

Appellant, a thirty-nine-year-old physician's assistant, committed various improprieties of a sexual nature during his examination of seven young enlisted females during their sick call visits to the medical clinic.  During sentencing, the defense called several witnesses who testified to Appellant's rehabilitative potential, including Appellant's battalion commander.  In addition to asking the battalion commander general questions about rehabilitative potential, defense counsel directly raised the question of whether the battalion commander thought Appellant should be returned to the unit:

> Q.  Sir, there's been testimony in this case by people
> in the medical community, professionals, that believe
> that Lieutenant Hill can be rehabilitated due to the
> fact that he came in here, pled guilty, was
> forthcoming and contrite. . . .  Based on the
> Lieutenant Hill that you know, that you've described
> to us, do you agree that he could be rehabilitated?

4

A.  I know that the testimony of those experts is important, but even without that, I would have thought that he certainly is rehabilitatable.

.  .  .  .

Q.  Do you think he can be a productive member of society?

A.  Absolutely.

Q.  Now, sir, the Judge has to make several decisions today.  One of them is whether or not [Appellant] should remain in the Army, and I'm not going to ask you whether you think he should remain [in] the Army, but if the decision is made for him to remain in the Army, do you believe he could be a -- would you take him back into the battalion?

A.  I'd have no qualms with that.

Q.  What do you base that answer on, sir?

A.  Based on the potential that he's shown me.  Let me caveat that and say I would not want him back as a clinician, but as an officer, a platoon leader, I feel that he would succeed.

During cross-examination, trial counsel probed the

battalion commander's stated willingness to "take [Appellant]

back into [his] battalion as a platoon leader":

Q.  If you had a platoon leader who sexually assaulted one of his subordinates, would you expect that person to stay in your battalion?

A.  The question was, if the Judge's decision was to retain him in the Army, and he chose my battalion, would I accept that, and I said yes.  If I was sitting in that panel over there as a juror, would I allow him to remain in the Army, no --

5

The trial judge, on his own motion, promptly interrupted the witness in mid-sentence, noting: "The response was not responsive to the question. It was also one that a witness is not allowed to make." Trial counsel then resumed his cross-examination of the battalion commander:

> Q. The question, sir, was whether you would take a platoon leader back into your unit, who has done one of these sexual assaults, not whether you would kick Lieutenant Hill out of the Army.
>
> A. I think you need to clarify your question.
>
> Q. You've got a platoon leader, he has one soldier under his care, and he fondles her breasts. Would you take that lieutenant back into your battalion?
>
> A. I would prefer charges on that lieutenant and let the justice take its course.
>
> . . . .
>
> Q. What kind of message do you think it would send to your female soldiers if you let someone who's done this type of action to junior enlisted soldiers back into the battalion --
>
> DC. Objection, Your Honor. He's also getting into . . . [.]
>
> MJ. Objection sustained.
>
> ATC. No further questions, Your Honor.

### C. POST-TRIAL PROCEEDINGS

After the court-martial was completed, the trial judge conducted an informal, mentoring discussion with counsel for both parties, commonly known as a "Bridge the Gap" session. According to a stipulation of fact subsequently entered into by

6

the parties, the trial judge made the following comment at that time:  "I was thinking of keeping him in until his commander said he didn't want him back," or words to that effect.  Defense counsel subsequently referred to the trial judge's Bridge the Gap statement in his post-trial submission to the convening authority.  Based on this submission, the convening authority, upon advice of the staff judge advocate, ordered a post-trial session held under Article 39(a), UCMJ.

At the Article 39(a) session, the post-trial judge considered whether the trial judge had relied upon inadmissible testimony when imposing the adjudged sentence and, if so, what curative action should follow.  See R.C.M. 1102(a), (b)(2).  The post-trial judge accepted the stipulation of fact regarding the Bridge the Gap statement.  The remainder of the Article 39(a) session included consideration of whether it was permissible under Military Rule of Evidence (M.R.E.) 606 to impeach the sentence by considering the trial judge's informal Bridge the Gap remarks; what the trial judge had meant by the stipulated remark; and whether the stipulated remark indicated that the trial judge had considered improper testimony in adjudging a dismissal as part of the sentence.  Defense counsel contended that the remark on its face showed that the trial judge had considered improper testimony -- the battalion commander's

remark that he would not have retained Appellant if he had been on the court-martial panel.  Trial counsel disagreed.

Although the parties briefly discussed whether the trial judge should be called to testify in the post-trial Article 39(a) session, he was not called as a witness or otherwise asked to explain his Bridge the Gap remark.  Subsequently, the post-trial judge issued written Findings of Fact and Conclusions of Law.  The post-trial judge concluded that the trial judge's informal Bridge the Gap remark constituted incompetent evidence that could not be used to impeach the sentence under M.R.E. 606(b).  In the alternative, the post-trial judge concluded that even if the trial judge's comments could be considered, there was no evidence that the battalion commander who testified at trial "ever opined, either directly or euphemistically, that the accused should be discharged."  In that regard, the post-trial judge made the following findings of fact concerning the context of the Bridge the Gap remarks:

> [The] remarks [during the informal Bridge the Gap
> discussion] are not evidence that he considered
> extraneous information.  [The trial judge's] comment
> that the commander said he didn't want him back is
> consistent with [the commander's] admitted testimony
> that he didn't want him back as a clinician.  Most
> importantly, [the commander] **never** testified the
> accused should be discharged.  He was not permitted to
> complete his answer to the question the defense
> identifies as resulting in the impermissible opinion.
> A fair reading of the record supports the conclusion
> that [the trial judge] cut off [the commander's]
> answer once it became clear that [the commander] was

> giving his opinion as a juror not as the accused's commander. [The trial judge, during the sentencing proceeding,] appropriately cut off the answer since the witness was improperly invading the province of the sentencing authority.

The post-trial judge added:

> In the context of his entire testimony as a defense witness, [the commander] clearly indicated his support for the accused's continued service in the Army.

### D. CONSIDERATION OF POST-TRIAL, NON-RECORD STATEMENTS

Both the post-trial judge and the Court of Criminal Appeals cited M.R.E. 606(b) as a basis for not considering the Bridge the Gap remarks by the trial judge. M.R.E. 606(b) applies expressly to limit testimony by a "member of a court-martial." Subsequent to Appellant's trial and the decision of the Court of Criminal Appeals, we held in United States v. McNutt, 62 M.J. 16 (C.A.A.F. 2005), that M.R.E. 606(b) does not apply to military judges. We also held that an extra-judicial statement by a military judge may be given appropriate consideration on appeal, subject to qualifications not applicable in the present case. Id. at 22-23.

In the present case, citation of M.R.E. 606(b) by the post-trial judge and the Court of Criminal Appeals was not prejudicial. Neither the post-trial judge nor the court below relied exclusively on M.R.E. 606(b). Both proceeded on the alternative theory that the Bridge the Gap statement was admissible in the post-trial session. Accordingly, the

9

following discussion shall proceed on the basis that it was appropriate for the post-trial judge to consider the Bridge the Gap statement as reflected in the stipulation of fact.

## II.  DISCUSSION

At the outset, we note that Appellant does not challenge the admissibility of evidence or the rulings of the trial judge during the sentencing proceeding.  Defense counsel sought and obtained the battalion commander's opinion as to Appellant's rehabilitative potential.  Under the latitude permitted to the defense under R.C.M. 1001(c), defense counsel asked the battalion commander whether he would accept Appellant back into his battalion if a decision was made to retain Appellant in the Army, and the witness gave an affirmative response.  The witness responded that although he would not take him back as a clinician, he would take him back as a platoon leader.

Once the defense opened the door to the issue of whether the battalion commander would want Appellant back in the unit, the prosecution appropriately sought to explore the witness's response on cross-examination by addressing the desirability of retaining in the unit a person who had committed the offenses of which Appellant had been convicted.  When the witness extended his answer to suggest what he might have done as a panel member, the trial judge promptly cut him off and said that the witness

was not allowed to make such a comment. The prompt and decisive action by the trial judge reflected his awareness that the defense had not opened the door to unlimited remarks about retention of Appellant.

The question raised by the granted issues is whether Appellant has established that the trial judge -- having expressly stated that the battalion commander could not testify as to whether Appellant should be discharged -- nonetheless proceeded to rely upon inadmissible testimony. See United States v. Davis, 44 M.J. 13 (C.A.A.F. 1996).

During the post-trial Article 39(a) session, Appellant had the opportunity to provide a complete account of the trial judge's remarks during the Bridge the Gap discussion so as to establish both the content and the context. Appellant chose not to do so, but instead relied on a short stipulation of fact which contained the following brief quotation from the trial judge: "I was thinking of keeping him in until his commander said he didn't want him back." Appellant contends that the trial judge was referring to the battalion commander's testimony that if he was on the panel, he would not vote to retain Appellant.

We do not evaluate the informal Bridge the Gap comments of the trial judge in isolation. We view the trial judge's remark in the context of his actions during trial and in light of the

entire record.  The record does not establish definitively whether the trial judge, in the Bridge the Gap session, was referring to:  (1) the testimony of the battalion commander that he would not want Appellant back in his unit as a clinician, or (2) the battalion commander's remarks about not retaining Appellant in the Army if he was on the panel.  Under these circumstances, the defense bears the burden of discounting the first alternative explanation and demonstrating that the trial judge relied upon the inadmissible testimony on non-retention, as reflected in the second alternative.

With respect to the first alternative, we note that at trial, the defense counsel opened the door to the basis for the battalion commander's views as to retention of Appellant in the unit.  In that context, the trial judge could properly consider the battalion commander's testimony that he would not want Appellant back in the unit as a clinician, and could give that testimony such weight as the trial judge deemed appropriate in the sentencing proceeding, including how it might bear on the question of a punitive discharge.  With respect to the second alternative, we note that the trial judge expressly stated that the battalion commander's remarks were "not responsive" and consisted of testimony "that a witness is not allowed to make."

As a general matter, we presume that a military judge knows the rules of evidence and considers testimony only for

12

permissible purposes.  See United States v. Prevatte, 40 M.J. 396 (C.M.A. 1994).  In the present case, that presumption is strengthened by the prompt action of the trial judge, which expressly cut off and rejected questionable testimony.  Just as we presume that the members follow the instructions of the military judge, see, e.g., United States v. Holt, 33 M.J. 400, 408 (C.M.A. 1991), we also presume that a military judge adheres to his own evidentiary rulings.  See Davis, 44 M.J. at 17 ("When a judge indicates he will not consider inadmissible evidence, . . . we presume that he will do as he says.").  In light of that presumption, and under the circumstances of this case, Appellant has not demonstrated that the trial judge relied upon inadmissible testimony in the course of adjudging the sentence.

## III.  CONCLUSION

The decision of the United States Army Court of Criminal Appeals is affirmed.