UNITED STATES, Appellee

v.

Danyel D. GREEN, Sergeant
U.S. Army, Appellant

No. 06-0520

Crim. App. No. 20021126

United States Court of Appeals for the Armed Forces

Argued November 28, 2006

Decided January 26, 2007

EFFRON, C.J., delivered the opinion of the Court, in which BAKER
and ERDMANN, JJ., joined.

STUCKY and RYAN, JJ., did not participate.

Counsel

For Appellant:  Major Billy B. Ruhling II (argued); Colonel John
T. Phelps II, Lieutenant Colonel Kirsten V. C. Brunson,
Lieutenant Colonel Steven C. Henricks, Major Charles L.
Pritchard Jr., and Captain Sean F. Mangan (on brief).

For Appellee:  Captain Adam S. Kazin (argued); Colonel John W.
Miller II,  Lieutenant Colonel Michele B. Shields, Major Tami L.
Dillahunt, and Captain Edward E. Wiggers (on brief).


Military Judge:  Robert L. Swann

THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

United States v. Green, No. 06-0520/AR

Chief Judge EFFRON delivered the opinion of the Court.

A general court-martial composed of a military judge sitting alone convicted Appellant, pursuant to mixed pleas, of cruelty and maltreatment (seven specifications), false official statement, assault consummated by a battery, indecent assault (two specifications), solicitation to commit adultery (two specifications), and adultery (three specifications), in violation of Articles 93, 107, 128, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 893, 907, 928, 934 (2000). The sentence adjudged by the court-martial included a bad-conduct discharge, confinement for thirteen months, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. The convening authority approved the findings and approved that portion of the sentence that provided for a bad-conduct discharge, confinement for thirteen months, and reduction to the lowest enlisted grade. The United States Army Court of Criminal Appeals affirmed in an unpublished opinion. United States v. Green, No. ARMY 20021126 (A. Ct. Crim. App. Mar. 20, 2006).

On Appellant's petition, we granted review of the following issue:

> WHETHER THE MILITARY JUDGE VIOLATED APPELLANT'S
> DUE PROCESS RIGHTS WHEN HE SENTENCED HIM BASED
> UPON HIS PERSONAL RELIGIOUS BELIEFS RATHER THAN
> LEGITIMATE SENTENCING PRINCIPLES.

United States v. Green, No. 06-0520/AR

For the reasons set forth below, we affirm.

## I.  JUDICIAL COMMENTS DURING SENTENCING

A court-martial has broad discretion to adjudicate the sentence, subject to the punishment limitations set forth in the UCMJ and the Manual for Courts-Martial, United States (MCM). Article 56, UCMJ, 10 U.S.C. § 856 (2000); Rule for Courts-Martial (R.C.M.) 1002.  Sentencing information is developed in an adversarial proceeding, subject to evidentiary rules designed for the sentencing process.  See R.C.M. 1001; United States v. Mack, 9 M.J. 300, 319 (C.M.A. 1980); MCM, Analysis of the Rules for Courts-Martial app. 21 at A21-70 (2005 ed.) [hereinafter Drafters' Analysis].  As part of the sentencing process, the accused may make a sworn or unsworn statement.  R.C.M. 1001(c)(2).  Although an unsworn statement is not subject to cross-examination by trial counsel or examination by the court-martial, the prosecution may present facts in rebuttal.  R.C.M. 1001(c)(2)(C).  If a military judge erroneously permits consideration of inadmissible evidence during sentencing, the error is tested for prejudice.  See United States v. Hysong, 47 M.J. 126, 126 (C.A.A.F. 1997); Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2000).

The court-martial must announce the terms of the sentence on the record.  R.C.M. 1007.  When the sentence is adjudicated

3

by a court-martial panel, the president of the court-martial reads the sentence. See Dep't of the Army, Pamphlet 27-9, Legal Services, Military Judges' Benchbook ch. 2, § IV, para. 2-5-25 (2002) [hereinafter Benchbook]. When the court-martial is composed of a military judge sitting alone, the military judge reads the sentence. Id. at para. 2-4-1.

Although the 1951 MCM authorized the court-martial to include in the record "a brief statement of the reasons for the sentence," that provision was eliminated in 1969. Compare MCM para. 76.b.(4) (1951 ed.), with MCM para. 76.b.(4) (1969 rev. ed.). According to the Drafters' Analysis to the 1969 MCM, the provision was deleted to remove the potential for improper command influence that might flow if court-martial panel members felt obligated to justify the panel's decision to a convening authority. See Dep't of the Army, Pamphlet 27-2, Analysis of Contents, Manual for Courts-Martial, United States, 1969, Revised Edition ch. 13, para. 76.b.(4), at 13-9 (1970) (citing ch. 13, para. 74.f.(3), at 13-4). The Drafters' Analysis also noted that the 1969 change was not intended to preclude the military judge, in a bench trial, from setting forth reasons for the judge's decision. See id. at ch. 13, para. 74.f.(4), at 13-14. If the military judge comments on the sentence, the remarks may be reviewed on appeal to determine whether the military

4

judge relied on inadmissible matter in determining the sentence. See United States v. Hill, 62 M.J. 271, 275 (C.A.A.F. 2006).

## II.   APPELLANT'S SENTENCING PROCEEDING

The prosecution's sentencing case focused on testimony from Appellant's victims concerning the details of the offenses and the harm caused by his conduct.  The defense sentencing case sought to emphasize the positive aspects of Appellant's character.  During the sentencing proceeding, defense counsel provided the military judge with a number of defense exhibits for identification, including a letter signed by Appellant's supervisors at a fast food establishment where Appellant held a part-time job.  The letter, which described Appellant in very positive terms, observed that Appellant "always talks a great deal about his wife and four children and about his beliefs in God."

Prior to formally introducing the letter into evidence, defense counsel presented the testimony of a noncommissioned officer to demonstrate that several of the complainants had chosen not to make formal statements.  The witness also testified that Appellant was a "good worker" and that he never personally observed Appellant engage in inappropriate sexual conduct.

On cross-examination, the witness acknowledged that Appellant had talked "about being a Christian." When the trial counsel asked the witness to describe his "feelings on that," the defense counsel objected on the grounds of relevance. The trial counsel responded that the line of questioning was relevant because the witness would "talk about" Appellant "not being a Christian." The defense counsel countered that the questioning was "highly prejudicial" and that he did not "want any court to consider the religious aspects of what is going on in ----."

Although the trial counsel attempted to interject that he was not addressing "the religious aspect," the military judge cut him off and directed his comments to defense counsel. The military judge observed that defense counsel had provided him with a document -- the letter marked as a defense exhibit for identification -- that "sort of indicates that the accused is a good Christian, God believing person." After observing that defense counsel did not disagree with his characterization of the letter, the military judge said "but I'll tell you what, even good Christians can make mistakes, okay, that's what the church is for, so I am not going to consider that aspect of it. Whether he's a good Christian or he's not a good Christian, okay."

The trial counsel apparently viewed this exchange as a caution against pursuing the subject of religion, and revised his cross-examination to focus on the witness's opinion of Appellant's ethics and integrity.

Subsequently, defense counsel introduced into evidence the letter from the supervisors at Appellant's part-time civilian job which included the comment that Appellant "always talks a great deal about his wife and four children and about his beliefs in God." Appellant made an unsworn statement in which he apologized to his victims and his family. He noted the high cost of his conduct, in terms of the cost to his career, his freedom, and his family. He also interjected matters of religion at several points:

> Instead of giving my matters to God and seeking
> comfort with my wife I went [sic] the people that
> I was close to, they were the people I worked
> with daily.

* * * *

> God has always been the center of my life but in
> my moment of distress I fell short of his glory.
> I pray for his forgiveness as I have repented and
> claimed my rightful place as his servant.

* * * *

> [T]here is no excuse for what I have done and I
> sincerely apologize but I pray to God that I can
> have the opportunity to take care of my family
> and make it up to them.

7

Appellant faced a maximum sentence to confinement of twenty-five years and three months.  MCM pt. IV, paras. 17.e., 31.e., 54.e.(1)(A), 62.e., 63.e., 105.e. (2005 ed.).  In the quantum portion of the pretrial agreement, which the military judge did not review prior to announcing the sentence, the convening authority had agreed to a confinement cap of forty months if Appellant otherwise fulfilled the terms of the agreement.  The prosecution argued for a sentence that would include confinement for five years.  Defense counsel argued for a sentence limited to a punitive discharge and reduction to the lowest enlisted grade, with no confinement in light of Appellant's acceptance of guilt and his otherwise "credible and honorable service."  The sentence announced by the military judge included thirteen months confinement.

Immediately prior to announcing the sentence, the military judge addressed Appellant to explain "why I think the sentence is appropriate for you."  The military judge began with a description of basic sentencing principles, including rehabilitation, punishment, protection of society, preservation of good order and discipline in the military, and deterrence. See Benchbook ch. 2, § V, para. 2-5-21, § VI, para. 2-6-10.  The military judge noted that the "weight I give any or all of these along with the other sentencing matters in this case, rest[s] solely within my discretion."

8

The military judge then turned to the harm Appellant's actions caused his victims, his family, and the Army.  In particular, the military judge noted that Appellant abused his leadership role as a noncommissioned officer, caused his victims mental duress, damaged the Army's reputation, and caused the Army financial detriment because several of Appellant's victims testified that they would not reenlist.

In the course of addressing Appellant, the military judge made the comments which are the subject of the present appeal.  After describing Appellant as "a predator" who operated "in secret," the military judge said:  "Some of the documents I've seen describe you as God fearing, strong in your belief in God.  The last time I looked there were 10 commandments.  Apparently one of those, which addresses your actions, you must have missed in the reading."

The military judge characterized Appellant's crimes as betraying his family and the Army:

> Trust and confidence was placed in you.  You
> abused it.  This Army's not high school, it
> is not a place for maltreating others.  You
> do unto others as you would expect to be
> treated.  That's the golden rule.  My job is
> now to set the matter straight.  Whatever I
> do cannot make up for what the soldiers
> experienced, to include having you as a
> leader.

In his concluding remarks, the military judge told Appellant that his actions "weren't mistakes, these were choices." He added:

> Every choice in life has a repercussion. It kind of reminds me of an old Charlie Daniels saying from a country music song. "You know what the problem [sic] in the world today is? People done gone and put their Bibles away. They're living by the law of the jungle, not the law of the land."

## III. DISCUSSION

Appellant contends that the military judge's comments: (1) reflected improper consideration of factors not relevant to sentencing; and (2) interjected the personal religious views of the military judge into the sentencing process, establishing an impermissible bias.

We review a military judge's consideration of sentencing factors under an abuse of discretion standard. See United States v. McDonald, 55 M.J. 173, 178 (C.A.A.F. 2001). We evaluate a claim of judicial bias by considering, in view of the sentencing proceeding as a whole, whether a reasonable person would doubt the court-martial's legality, fairness, and impartiality. United States v. Burton, 52 M.J. 223, 226 (C.A.A.F. 2000).

At the outset, we note that the military judge's comments during the prosecution's cross-examination of a defense witness

10

do not demonstrate improper consideration of religion or bias. The military judge stated that he would not consider Appellant's fealty to religious principles, and the prosecution did not pursue the subject of religion.

A number of remarks made by the military judge during his explanation of the sentence directly addressed the subject of religion.  The military judge observed that that Appellant had "[a]pparently . . . missed" one of the "10 commandments" and that Appellant's conduct reminded him of the lament in a country music song that the "problem in the world today" is that people have "put their bibles away."

Even if we view his references to the "golden rule" as invoking a nonsectarian ethical concept, see Jeffrey Wattles, The Golden Rule 172-74 (1996), the other remarks have a specific religious connotation.  The suggestion that Appellant had apparently overlooked one of the "10 commandments" represented a thinly veiled reference to Appellant's conviction for adultery, an offense specifically denounced in the Decalogue.  Exodus 20:14; Deuteronomy 5:18.  The quotations from the country music song expressly invoked a religious text.

A military judge may not interject his or her personal beliefs into the sentencing process.  See United States v. Bakker, 925 F.2d 728, 740-41 (4th Cir. 1991).  An accused, however, has a broad right during allocution to bring aspects of

11

his or her personal life for consideration in extenuation or mitigation. See Drafters' Analysis app. 21 at A21-69 to A21-71; United States v. Tschip, 58 M.J. 275, 276 (C.A.A.F. 2003). An accused, for example, may attempt to demonstrate "repentance and readiness for rehabilitation." See United States v. Warren, 13 M.J. 278, 284 (C.M.A. 1982).

Just as an accused during sentencing may seek to depict a positive image by describing adherence to the tenets of a civic organization, an accused, such as the Appellant in this case, may attempt to convince the military judge that that his or her religious practices and beliefs demonstrate repentance and readiness for rehabilitation. When the accused does so, the military judge may properly take into account the credibility and context of the accused's statement. See Warren, 13 M.J. at 284. The military judge must ensure that the evidence is considered for the appropriate purpose, and that the military judge does not interject his or her personal religious beliefs into the sentencing process. See Bakker, 925 F.2d at 740-41. In assessing the allegations of error in the present case, we take the following considerations into account. First, Appellant, who was convicted of numerous offenses, received a sentence which included confinement for only thirteen months. The adjudged confinement was far less than the authorized maximum of twenty-five years, the prosecution's request of five

12

years, or the pretrial agreement cap of forty months.  In that context, the sentence does not reflect prejudicial consideration of extraneous factors.  Second, the subject of religion was not first interjected into the proceedings by the military judge. The defense initially raised the subject when counsel provided the military judge with a document indicating that Appellant would rely on matters of religion in the sentencing case.  The defense subsequently interjected the subject of religion repeatedly into the proceedings through the introduction of a document that addressed Appellant's religion and through Appellant's unsworn statement.  Third, when the prosecution sought to pursue the question of whether Appellant thought of himself as a "good Christian," the military judge expressly stated that he would not consider the Appellant's fealty to his religious tenets as a sentencing factor.  Fourth, defense counsel did not object to the military judge's remarks.  While a defense counsel might be reluctant to object to judicial remarks immediately prior to the announcement of the sentence, defense counsel had no reason to be reticent in challenging the impartiality of the military judge immediately thereafter if counsel perceived the remarks as reflecting consideration of improper factors or bias.  See Burton, 52 M.J. at 226.  Finally, we note that the military judge's sentencing remarks primarily discussed appropriate sentencing considerations, with incidental

references to religion.  The first two references involved matters of common knowledge, and the third referred to the lyrics of a popular song.

In context, and in the absence of defense objection, the military judge's remarks in the present case reflect a judge attempting to address Appellant's sentencing case, and do not reflect an effort to interject religion as either a sentencing factor or a matter of bias.  Compare Bakker, 925 F.2d at 740-41 (trial judge impermissibly interjected his religious beliefs into the proceedings).  The military judge's comments in their entirety evoked established sentencing principles and tied those principles to Appellant's actions and the effect of those actions on his victims, his family, and the Army.  Appellant's unsworn statement provides a relevant context in which to view the military judge's comments, most of which were made in response to the unsworn statement.  In light of the military judge's sentencing statement as a whole and the context of his references to religion, we conclude that if the military judge erred, any error was harmless.

## IV.  DECISION

The decision of the United States Army Court of Criminal Appeals is affirmed.

14