# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
CAMPANELLA, SALUSSOLIA, and WEIS[1]
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant JOHN M. RUSSELL**
**United States Army, Appellant**

ARMY 20130463

Headquarters, I Corps
David L. Conn, Military Judge
Colonel William R. Martin, Staff Judge Advocate (pretrial)
Colonel Randall J. Bagwell, Staff Judge Advocate (post-trial)

For Appellant:  Lieutenant Colonel Melissa R. Covolesky, JA; Major Andres Vazquez, Jr., JA; Captain Scott A. Martin, JA (on brief); Lieutenant Colonel Christopher D. Carrier, JA; Major Brendan R. Cronin, JA; Captain Benjamin A. Accinelli, JA (on brief in response to specified issues).

For Appellee:  Colonel Mark H. Sydenham, JA; Lieutenant Colonel A.G. Courie III, JA; Major Michael E. Korte, JA; Lieutenant Colonel Karen J. Borgerding, JA (on brief); Colonel Tania M. Martin, JA; Lieutenant Colonel Eric K. Stafford, JA; Major Michael E. Korte, JA; Lieutenant Colonel Karen J. Borgerding, JA (on brief in response to specified issues).


28 September 2017

------------------------------------
OPINION OF THE COURT
------------------------------------

WEIS, Judge:

We hold that the military judge's comments prior to announcing appellant's sentence did not demonstrate he considered inappropriate matters for sentencing.

A military judge sitting as general court-martial convicted appellant, contrary to his pleas, of attempted premeditated murder and five specifications of premeditated murder, in violation of Articles 80 and 118, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 918 (2006) [hereinafter UCMJ].  The military judge found

---

[1] Judge WEIS took final action in this case while on active duty.

appellant guilty, pursuant to his plea, of aggravated assault, in violation of Article 128, UCMJ.[2]  The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for life without the possibility of parole, and reduction to the grade of E-1.

This case is before us for review pursuant to Article 66, UCMJ.  Appellant raised two assignments of error, one of which led this court to specify an additional issue regarding whether remarks by the military judge immediately prior to announcing the sentence demonstrated he considered inappropriate matters for sentencing.  The specified issue merits discussion, but no relief.  Appellant also raised issues pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), which we find lack merit.

## BACKGROUND

While deployed to Iraq, appellant fatally shot five service members at the Camp Liberty Combat Stress Clinic (CSC).  Appellant suffered from mental illness and was seen by several mental health practitioners during the days immediately preceding the offenses.

Ten days prior to the offenses, a subordinate soldier accused appellant of making an inappropriate sexual remark.  Appellant's officer-in-charge (OIC) informally counseled appellant with a warning.  The next morning, appellant responded by acting in an aggressive and disrespectful manner toward the OIC.  Due to concerns as to mental health issues, the OIC deferred any disciplinary consideration until appellant could be evaluated by a mental health provider.

Eight days before the offenses, appellant again confronted his OIC and accused him of "stab[ing him] in the back" by providing him additional responsibilities, only to set him up for failure.  Appellant had previously requested greater responsibilities for career development.  By this juncture, appellant perceived a conspiracy by the unit to remove him from the Army.

Four days before the offenses, appellant was seen by a psychologist and a psychiatric nurse at the CSC.  After this meeting, appellant told his OIC the appointment was one of the worst experiences of his life and he never wanted to return to the CSC.  Appellant believed the practitioners had not taken him seriously and failed to realize he needed help.  The command, concerned with appellant's mental health status, removed the bolt from appellant's assigned weapon and placed him on suicide watch.

---

[2] Appellant pleaded guilty to attempted murder without premeditation and five specifications of murder without premeditation.

After this, appellant met with another psychologist who referred appellant to a psychiatrist for consideration of psychiatric medication. On the day before the offenses, appellant met with the psychiatrist at the CSC. Appellant complained of depression, anxiety, and stress and expressed both contempt with everyone in his unit and dissatisfaction with his prior CSC appointments. Appellant also stated he wanted a medical discharge and a release from theater. The psychiatrist prescribed appellant medication. However, testimony at trial indicated the medication would take two to three weeks to become effective. Subsequently, appellant told the unit chaplain and company executive officer he was pleased with this appointment.

The following morning, the unit chaplain contacted the psychiatrist because appellant was having suicidal ideations, did not trust anyone, and felt that no one would help him. The chaplain also inquired into inpatient care for appellant. The psychiatrist advised the chaplain to have the command initiate a command referral, disarm appellant, and keep him under constant observation.

The command sent appellant to meet with the psychiatrist at noon. Appellant was escorted to the CSC by an armed unit escort. Appellant himself was unarmed. Appellant's escort and a clinic clerk observed that appellant "seemed fine" while in the CSC waiting room. However, a few minutes into the appointment, appellant angrily rushed out of the office yelling, "[f]uck this shit, let's go." The psychiatrist and appellant argued outside the CSC building. One soldier assigned to the clinic recalled appellant stating he was done with the Army and wanted to leave, and the psychiatrist responded by telling appellant that if he wanted to get out of the Army, he had to go through proper procedures. Military police were summoned. Upon their arrival, appellant threw his pocket knife to the ground, tried to enter their vehicle, and suggested that they arrest him. The military police were instructed by a military police desk sergeant to release appellant to the escort for return to his unit.

Upon arrival at the unit, appellant took the escort's weapon, chambered a round, pointed the weapon at his escort, commandeered the vehicle, and returned unescorted to the CSC. While in the vehicle outside the CSC, appellant smoked a cigarette, removed his name tape from his uniform, and removed the scope from the weapon.

Appellant exited the vehicle and proceeded to the rear of the CSC building. Before entering the building, he fired, through an open window, a single fatal round, striking an officer in the head. Appellant next entered the back entrance of the CSC and fired four rounds at another officer. One of the rounds struck the officer's spinal cord, rendering him defenseless. Appellant approached the officer and fired a single fatal round into the officer's head.

Soldiers in the CSC heard shots fired and began to exit through doors and windows. One soldier exited the building to secure a weapon and ammunition to

neutralize appellant. When this soldier re-entered the CSC and looked around a doorway, appellant fatally shot him in the chin.

Three soldiers were seeking cover under furniture in the CSC sign-in room. Appellant shot one soldier in the hip; as the soldier crawled out from under a desk, appellant fatally shot him in the head. Appellant then fired a single fatal shot into the head of another soldier hiding under the desk. The third soldier escaped from the CSC, avoiding rounds fired by appellant. Appellant exited the CSC, set the weapon on the ground, stated that he "just killed some people," and was apprehended by military police.

During the court-martial, immediately prior to announcing the sentence, the military judge made the following comments relevant to the specified issue:

> Like everyone, I have great compassion for the victims of Sergeant Russell's crimes. I have never been so grieved as I have been by learning of the impact of Sergeant Russell's crimes on the lives of so many, including his own family. They are indelible, unchangeable, and of an indescribable magnitude.
>
> Sergeant Russell, I want you to know that I have compassion for you. I have anguished over both the findings and the sentence I am about to impose. No person is fully defined by his behavior at a moment in time. I know from your fellow soldiers, your sisters, your brother-in-law, your son, your mother, and your wife, that you have the capacity for good. You have endured much in your life, including some things that only soldiers must endure. And I know that good has resided in you.
>
> You also have enormous capacity for evil, as great an evil as human beings are capable of possessing. As for the debate between the prosecution and the defense as to whether every person categorically is or is not capable of committing a certain act, in your case, that subject is not a matter of debate. I agree with you, Sergeant Russell, you are not a monster, but you have knowingly and deliberately done incredibly monstrous things. You bear the full responsibility of your decisions and your actions; and I am obligated to adjudicate the consequences. And you must, and I believe that you will, accept those consequences.

> Sergeant Russell, you have forced many to drink from a bitter cup, and that includes this court. That cup is now before you.

## LAW AND ANALYSIS

Nothing in military jurisprudence precludes a military judge from making remarks related to sentencing. *United States v. Gardner*, ARMY 8801082 (A.C.M.R. 3 Nov. 1988) (mem. op.) (The military judge's exposition to provide the accused with an idea of the foundation of his sentence was not error per se, but is "a potentially erroneous practice.") (citing *United States v. Wiggers*, 25 M.J. 587 (A.C.M.R. 1987)).

Although the 1951 Manual for Courts-Martial [hereinafter *MCM*] authorized the court-martial to include in the record "a brief statement of the reasons for the sentence," that provision was eliminated in 1969. *Compare MCM* para. 76.b.(4)(1951 ed.), *with MCM* para. 76.b.(4)(1969 rev. ed.). The Drafters' Analysis noted that the 1969 change was not intended to preclude the military judge, in a bench trial, from setting forth reasons for the judge's decision. *United States v. Green*, 64 M.J. 289, 291 (C.A.A.F. 2007). However, if a military judge comments on the sentence, the remarks may be reviewed on appeal to determine whether the military judge relied on inadmissible matters in determining the sentence. *Id.* at 290-91 (citing *United States v. Hill*, 62 M.J. 271, 275 (C.A.A.F. 2006)).

Appellant contends comments made by the military judge prior to sentencing reflect an improper consideration of factors not relevant to sentencing because the military judge "improperly considered the impact on the court and the impact on the judge personally in determining an appropriate sentence."

### A. Standard of Review

A military judge's consideration of sentencing factors is reviewed under an abuse of discretion standard. *Green*, 64 M.J. at 292 (C.A.A.F. 2007) (citing *United States v. McDonald*, 55 M.J. 173, 178 (C.A.A.F. 2001)).

### B. Relevant Considerations for Sentencing

A court-martial has broad discretion to adjudicate the sentence, subject to the punishment limitations set forth in the UCMJ and the *MCM*. Sentencing must comply with due process and a judge may not base a sentence on impermissible considerations such as race, religion, or gender. *Gardner v. Florida*, 430 U.S. 349, 358 (1977).

Sentencing information is developed in an adversarial proceeding, subject to evidentiary rules designed for the sentencing process. *Green*, 64 M.J. at 290 (citing

Rule for Courts-Martial [hereinafter R.C.M.] 1001; *United States v. Mack*, 9 M.J. 300, 319 (C.M.A. 1980)). Relevant considerations include: matters presented by the prosecution to include evidence of aggravation (R.C.M. 1001(b)); "victim impact evidence" (R.C.M. 1001(b)(4)); matters presented by the defense to include matters in extenuation and mitigation (R.C.M. 1001(c)); and additional matters including "[a]ny evidence properly introduced on the merits before findings" including "[e]vidence related to any mental impairment or deficiency of the accused" (R.C.M. 1001(f)).

In reviewing the military judge's comments in the context of the entire record, we conclude that the military judge did not base the sentence on any impermissible factor. Rather, the statements of the military judge indicate he clearly understood and properly considered matters presented as to aggravation, extenuation and mitigation, victim impact, and evidence "relating to any mental impairment or deficiency of the accused" during sentencing deliberations.

*1. Comments as to Grieving and Compassion by the Military Judge*

Appellant takes issue with the military judge's comment that: "I have never been so grieved as I have been by learning of the impact of Sergeant Russell's crimes on the lives of so many." Specifically, appellant argues this comment reflects the revelation of some inappropriate personal grieving by the military judge.[3] However, the full comments of the military judge reflect that he also had never been so grieved by learning of the impact on the lives of appellant's family.

Whenever a judge has discretion as to sentencing, consideration of the impact of the offense is an important factor in the exercise of that discretion. R.C.M. 1001(b)(4); *see also Payne v. Tennessee*, 508 U.S. 808, 819-20 (1991) ("Assessment of harm caused by the defendant as a result of the crime charged has understandably been an important concern in criminal law, both in determining the elements of the offense and in determining the appropriate punishment.").

It is not per se impermissible that a military judge articulate being moved by the impact of the proceedings on the victims, appellant, and appellant's family. Nor is it impermissible for a military judge to form a feeling of compassion in a criminal sentencing context. There exists a "humanistic" perspective to performing the duties of judicial office and compassion has an honored place in justice. Compassion is developed through consideration of all relevant sentencing factors including, but

---

[3] In the alternative, appellant argues this comment reflects that the military judge was "personally grieved that the accused exercised his rights to: 1) plead not guilty; 2) contest part of his case (the premeditation); and 3) put on a robust sentencing case[.]" Upon review of the record, we summarily reject this alternate argument as lacking any merit.

certainly not limited to, victim impact evidence and matters of extenuation and mitigation.  R.C.M. 1001(b)(4), (c).

The military judge stated he had "great compassion for the victims;" he also stated directly to appellant, "I want you to know that I have compassion for you."  The military judge did not conceal that he was both grieved by and moved with compassion as to the suffering he observed during the proceedings.  This sense of compassion by the military judge—directed to all parties concerned—allowed him to perceive and understand every dimension of the overwhelming effect and incalculable suffering of the victims, the appellant's family, and appellant.

We therefore conclude the military judge's comments at issue, considered in their entirety and in context, evoked "established sentencing principles and tied those principles to Appellant's actions" and the effect of his actions on his victims, his family, and the Army.  *Green*, 64 M.J. at 295.

### *2.  Biblical Reference*

Appellant notes that the phrase "bitter cup" is "a biblical reference that refers to 'immense suffering'" or to "suffer greatly." Appellant concedes this is an apt characterization with respect to the victims in the case, but views this as a revelation that the military judge included himself as a victim in the proceeding.

"The Constitution, of course, does not require a person to surrender his or her religious beliefs upon the assumption of judicial office."  *United States v. Bakker*, 925 F.2d 728, 741 (4th Cir. 1991).  Courts, however, cannot sanction sentencing procedures that create the perception of the bench as a pulpit from which judges announce their personal sense of religiosity and simultaneously punish defendants for offending it.  *Id*. at 740.  Nor may a judge interject his or her personal religious beliefs into the sentencing process.  *Green*, 64 M.J. at 293 (citing *Bakker*, 925 F.2d 728 at 740-41)).

In the instant case, the military judge, through his reference to the "bitter cup," opened the door to criticism that any sentence ultimately imposed was based on an improper factor.[4]  While reasonable people could find a religious connotation, the phrase "bitter cup" is also colloquially synonymous with meaning "something unavoidable and unpleasant."  http://www.thesaurus.com/browse/bitter%20cup?s=t

---

[4] As one judge has succinctly observed:  "Thus it appears that religious references by trial judges in the sentencing context—though potentially risky—are not per se impermissible; they become problematic, however, if they are used—or reasonably appear to be used—as the basis for the sentence itself." *Torres v. State of Florida*, 124 So. 2d 439 (Fla. 1st DCA 2013) (Makar, J., concurring with opinion).

RUSSELL—ARMY 20130463

(last visited 25 September 2017).[5]  The entire court-martial, as well as the ultimate sentence imposed, could reasonably be deemed as "unavoidable and unpleasant" and having caused "great suffering" to all involved parties.  The "bitter cup" statement could also relate to the "unavoidable and unpleasant" task of the military judge sentencing appellant to life in prison with no possibility of parole.  The military judge's statement that he "anguished over both the findings and the sentence" reveals he considered the evidence presented both in aggravation as well as extenuation and mitigation in determining an appropriate sentence.

Viewing the military judge's statement in context, as a whole, rather than in isolation, we are not convinced that the biblical reference, if any was actually intended, impermissibly formed "the basis,"[6] a "primary basis,"[7] or "any basis," for the announced sentence.  The record does not support that the military judge impermissibly took into consideration his own religious beliefs during sentencing deliberations.

Upon a review of the entire record, we conclude that the military judge's sentencing remarks addressed appropriate and legally permissible sentencing considerations with only an incidental reference to religion.  *Green*, 64 M.J. at 294.

With regard to general commentary by military judges, while not per se impermissible, we nonetheless find the advice from this court's predecessor in *Gardner* still applicable today:

> We encourage the military judge in such cases to restrict his comments to addressing the need demonstrated, and not to expound his personal opinions.  Explanatory comments must not become an obloquy, impeach the findings or sentence, or make reference to matters outside the record.

*Gardner*, ARMY 8801082 at *2.

---

[5] For instance, Winston Churchill said of the 1938 Munich Agreement:  "This is only the first sip, the first foretaste of a bitter cup which will be proffered to us year by year unless by a supreme recovery of moral health and martial vigour, we arise again and take our stand for freedom as in the olden time."  https://www.winstonchurchill.org/resources/speeches/1930-1938-the-wilderness/the-munich-agreement (last visited 25 September 2017).

[6] *Bakker,* 925 F. 2d at 741 ("this case involves the explicit intrusion of personal religious principles as the basis of a sentencing decision"); *Arnett v. Jackson*, 393 F.3d 681, 687-88 (6th Cir. 2005) (Finding no due process violation when sentencing judge's reference to a Bible verse was not the "basis" of the sentence or the judge's "final source of authority.").

[7] *State v. Arnett*, 88 Ohio St. 3d 208, 724 N.E.2d 793, 803 (2000).

**CONCLUSION**

The findings of guilty and the sentencing are AFFIRMED.

Senior Judge CAMPANELLA and Judge SALUSSOLIA concur.

FOR THE COURT:

JOHN P. TAITT
Acting Clerk of Court