# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, RODRIGUEZ, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Staff Sergeant MICHAEL G. ADDESSO, II**
**United States Army, Appellant**

ARMY 20190101

Headquarters, I Corps
Lanny Acosta, Jr. and Jennifer Green, Military Judges
Colonel Oren H. McKnelly, Staff Judge Advocate

For Appellant: Major Angela D. Swilley, JA; Captain Paul T. Shirk, JA.

For Appellee: Lieutenant Colonel Wayne H. Williams, JA.

9 December 2019

------------------------------------
SUMMARY DISPOSITION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

RODRIGUEZ, Judge:

Appellant claims the military judge erred in precluding his defense counsel from arguing during sentencing about the potential effect of a punitive discharge on appellant's medical benefits in retirement.[1] We find the military judge erred, but find no prejudice to appellant.

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of two specifications of sexual abuse of a child in violation of Article 120b, Uniform Code of Military Justice, 10 U.S.C. §§ 920b [UCMJ]. The

---

[1] Appellant personally raised this matter pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). Appellate defense counsel did not raise any assigned errors. We have given full and fair consideration to appellant's other matter raised pursuant to *Grostefon*, and find it merits neither discussion nor relief.

military judge sentenced appellant to a bad-conduct discharge and confinement for forty-two months. The convening authority approved the sentence as adjudged.[2]

## BACKGROUND

### Misconduct

Appellant retired from the Army on 1 February 2016, with twenty years of service. While on active duty, between 1 June 2015 and 30 November 2015, appellant committed lewd acts on LC, who was thirteen and fourteen years old at the time. Appellant met LC when she was ten years old while coaching his son's youth bowling team, of which LC was a member.

Other parents at the bowling alley witnessed appellant inappropriately touching LC, such as rubbing her shoulders and back, touching her face and hair, having her sit on his lap, and smacking her buttocks after she bowled. LC and her mother would spend significant time at appellant's home, often for parties, barbeques, dinners, and game nights. Appellant frequently communicated with LC through flirtatious text messages. Appellant's phone number was saved as "Bestie," in LC's cell phone.

On the day before LC's fourteenth birthday, she spent the night at appellant's home. At some point during the evening, appellant moved LC's shirt and bra, and touched her breast. A few months later, LC was again alone with appellant at his home. Appellant took LC to a mattress, laid down on top of her, started kissing her lips, proceeded to remove her clothing, and grabbed her breasts and genitalia.

### Sentencing Proceedings

During appellant's unsworn statement during sentencing proceedings, appellant testified about his recurring cancer diagnosis. Appellant was diagnosed with cancer while on active duty, underwent surgery, and then "came down with another round of cancer," after he retired. Appellant testified he expects to have more issues with cancer in the future and needs his Department of Veterans Affairs benefits to pay for treatment and medications. The defense also submitted into evidence a report of estimated retirement benefits for appellant, which estimated the value of the medical benefits he would receive as a retiree. Further, appellant's

---

[2] The convening authority also credited appellant with one day against his sentence to confinement, and waived automatic forfeitures of pay and allowances for a period of one month, or until release from confinement, or upon termination of appellant's eligibility to receive retired pay, whichever is earlier, with the direction that the funds be paid for the benefit of appellant's dependents.

father testified that he was concerned about appellant's ability to "survive" without his military benefits.

During argument on sentencing, the defense counsel argued that a discharge would take away appellant's medical benefits and he has "profound medical concerns." The military judge interrupted defense counsel's argument stating, "Counsel, let me just interrupt. Are you asking me to consider these collateral consequences that you're talking about?" The defense counsel responded that the loss of medical benefits is a direct consequence of a discharge. The military judge disagreed and stated, "They're not direct consequences, these are collateral consequences . . . ."

## LAW AND DISCUSSION

Appellant asserts the military judge committed error by not considering mitigating evidence, in the form of the impact a discharge would have on his retirement medical benefits, which was discussed in appellant's unsworn statement and entered into evidence as a defense exhibit. We agree, but find appellant was not prejudiced by the error.

"We review a military judge's consideration of sentencing factors under an abuse of discretion standard." *United States v. Green*, 64 M.J. 289, 292 (C.A.A.F. 2007) (citing *United States v. McDonald*, 55 M.J. 173, 178 (C.A.A.F. 2001)). A court-martial is "to concern [itself] with the appropriateness of a particular sentence for an accused and his offense, without regard to the collateral administrative effects of the penalty under consideration." *United States v. Griffin*, 25 M.J. 423, 424 (C.M.A. 1988). "A collateral consequence is '[a] penalty for committing a crime, in addition to the penalties included in the criminal sentence.'" *United States v. Talkington*, 73 M.J. 212, 215 (C.A.A.F. 2014) (alteration in original) (citations omitted). "The general rule concerning collateral consequences is that courts-martial are to concern themselves with the appropriateness of a particular sentence for an accused and his offense, without regard to the collateral administrative effects of the penalty under consideration." *Id.* at 215 (internal citation and brackets omitted).

Our Superior Court has held that evidence of an accused's estimated retirement benefits, if the accused is punitively discharged, is clearly admissible under Rule for Courts-Martial (R.C.M.) 1001(c)(1)(B),[3] when the accused is "literally knocking at retirement's door at the time of his court-martial," requests

---

[3] Rule for Courts-Martial 1001(c)(1)(B) permits matters "[i]n mitigation of an offense [to be] introduced to lessen the punishment to be adjudged by the court-martial . . . ."

"an opportunity to present" such evidence, and has "such evidence to present." *United States v. Becker*, 46 M.J. 141, 1444 (C.A.A.F. 1997); *see also United States v. Luster*, 55 M.J. 67, 70-71 (C.A.A.F. 2001).

### A. *Appellant's Retirement Medical Benefits*

Here, appellant was not merely "knocking at retirement's door at the time of his court-martial;" he had already entered through that door and was in a retired status. Following the analysis in *Becker*, we similarly note that defense counsel presented evidence to the factfinder regarding appellant's retirement medical benefits and attempted to argue it as mitigation evidence for the military judge to consider during sentencing. Our Superior Court has unequivocally held that retirement benefits are not a collateral consequence, but rather a direct consequence relevant for the factfinder's consideration in determining an appropriate sentence. *See, e.g., United States v. Greaves*, 46 M.J. 133, 138 (C.A.A.F. 1997) ("Once a bad-conduct discharge is adjudged and executed, it terminates a servicemember's military status and any concomitant right to receive military retirement benefits."). We note this was well-established law at the time of appellant's court-martial. Accordingly, the military judge abused his discretion in not permitting defense counsel to argue the matter in sentencing.

### B. *Prejudice*

Appellant requests we disapprove his bad-conduct discharge. We decline. Despite the military judge's error, we are confident appellant would have received a bad-conduct discharge and any error was harmless beyond a reasonable doubt. *See* UCMJ art. 59(a) ("A finding or sentence of a court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused."); *see also United States v. Sales*, 22 M.J. 305, 309 (C.A.A.F. 1986) (Court of Appeals may affirm a sentence despite a legal error if it is convinced that even in the absence of the error, the court-martial would have adjudged the same sentence.)

In arriving at our conclusion, we carefully considered appellant's entire sentencing case, including his service record, the impact of the loss of appellant's retirement medical benefits on his cancer diagnosis, and the witness testimony regarding appellant's character as a husband, father, and soldier. We balance those factors against the severity of the offenses for which he was convicted. On more than one occasion, appellant sexually abused a minor girl who trusted him and regarded him as a father-figure. Appellant's offenses "are of the type that [we, as appellate judges,] have experience and familiarity with to reliably determine" that

appellant merits a bad-conduct discharge. *United States v. Winckelmann*, 73 M.J. 11, 16 (C.A.A.F. 2013).[4]

## CONCLUSION

On consideration of the entire record, the findings of guilty and sentence are affirmed.

Senior Judge Burton and Judge Fleming concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[4] Although appellant did not request we disapprove any of his confinement, we considered such relief and also conclude it is not warranted.