**334**

UNITED STATES, Appellant,

v.

Jeffrey T. KING (A person in the custody of the Armed Forces serving a sentence imposed by court-martial), Appellee.

No. 63,847.

CM 8801441.

U.S. Court of Military Appeals.

Argued June 14, 1990.

Decided Aug. 27, 1990.

For the Accused: *Captain Alan M. Boyd* (argued); *Colonel Robert B. Kirby* and *Lieutenant Colonel Russell S. Estey* (on brief).

For the United States: *Captain Randy V. Cargill* (argued); *Colonel Alfred F. Arquilla* and *Lieutenant Colonel Daniel J. Dell'Orto* (on brief).

*Opinion of the Court*

EVERETT, Chief Judge:

Like many cases we have recently considered, this case poses an issue as to admissibility of evidence in aggravation that the prosecutor introduced during presentencing proceedings. We are called upon to decide this issue certified by the Acting Judge Advocate General of the Army:

WHETHER THE ARMY COURT OF MILITARY REVIEW ERRED IN HOLDING THAT A GOVERNMENT SENTENCING WITNESS IMPROPERLY REFERRED TO SPECIFIC INSTANCES OF CONDUCT AS SUPPORT FOR HIS OPINION REGARDING [THE ACCUSED'S] REHABILITATIVE POTENTIAL.

I

At the time of his trial on June 28–29, 1988, at Fort Leavenworth by a general court-martial composed of members, King was serving a sentence to 3 years' confinement that previously had been imposed by another general court-martial. The bad-conduct discharge that had been adjudged earlier by that court already had been executed.

After King had been found guilty, contrary to his pleas, of disobedience of a lawful order by a noncommissioned officer (NCO) and assault on the same NCO then in the execution of military law-enforce-

ment duties,* the court-martial turned its attention to sentencing. Trial counsel introduced a promulgating order from the earlier court-martial and King's personnel records; and then he called Major Robert J. Kurtz as the Government's sole witness in aggravation. Thereupon, defense counsel objected in these terms:

> It is my understanding that the Government is going to call Major Kurtz, who is the senior corrections officer at the DB [Disciplinary Barracks]. I presume, based on my interview, that he intends to talk about the rehab potential of the accused. Defense would specifically object to his being allowed to testify in aggravation because he has no personal knowledge of the accused, has never even met the accused. His entire information is based on his review of records.

Trial counsel responded that Major Kurtz "is the executive officer for the Directorate of Custody and it is their job over there to keep track of the inmates, with most of that being done through the records of the accused, and he should be competent to testify from them." The military judge decided to "allow his testimony."

Major Kurtz, whose current duty position was "senior correctional officer," testified that inmate King had arrived at the disciplinary barracks on June 4, 1986, and had "been in maximum custody since" October 7, 1986. According to Kurtz, it was "[n]ot at all" "common for an inmate to spend that much time in maximum custody." Trial counsel then inquired, "Why has inmate King spent that much time there?" Defense counsel objected that "it calls for speculation as noted in my prior objection. He has no personal knowledge."

The military judge directed trial counsel to "[a]sk a few more preliminary questions," whereupon Major Kurtz described how at Fort Leavenworth a Discipline and Adjustment (D and A) Board was the "primary tool" for maintaining discipline. As he explained, this board could recommend

"[d]isciplinary actions rang[ing] from a verbal reprimand, to disciplinary segregation, to forfeiture of good-conduct time."

Trial counsel then inquired, "How many D and A Boards has inmate King received?" Defense counsel objected that "now we are in specific areas of these nebulous numbers and what they mean. It is an issue of rehab potential and I inquire on the basis for his knowledge, that's one thing, which, are you basing it, you know, on specific instances, but as to other things, this is inappropriate."

This objection resulted in the following colloquy:

TC: I'm not going to get into specific acts, sir.

DC: Even specific numbers.

TC: It is very pertinent to a person's rehabilitative potential.

MJ: I will allow it.

TC: Thank you, sir.

Q. How many D and A Boards has inmate King had?

A. He has appeared before 19 D and A Boards.

Q. On the scale of things, is that a lot, a little, average?

A. That's a lot.

Q. And as a result of these D and A Boards, what has that done to inmate King's time in the DB?

A. That's the reason he has stayed in maximum custody since 7 October '86. It has also adjusted his minimum release date and forfeiture of good-conduct time.

Q. Okay, sir. Thank you. Sir, given everything that you know about inmate King, from his file and what not, do you have an opinion as to his rehabilitative potential?

A. I don't believe he will ever be a law abiding, tax paying, productive citizen.

---

* In violation of Articles 92 and 128, Uniform Code of Military Justice, 10 USC §§ 892 and 928, respectively. A third charge of communi-

cating a threat, in violation of Article 134, UCMJ, 10 USC § 934, had been dismissed on motion of the defense for a finding of not guilty.

## II

The Court of Military Review had these comments about this testimony by Major Kurtz:

> We conclude that MAJ K's testimony pertaining to appellant's appearances before nineteen D and A Boards was inadmissible and resulted in consideration by the panel of purported specific instances of conduct by the appellant.[1] *See United States v. Fontenot*, 29 M.J. 244, 248 n. 4 (C.M.A.1989); *United States v. Wingart*, 27 M.J. 128 (C.M.A.1988). It does not matter that the "misconduct" was not described further, or the description was merely that appellant appeared before nineteen boards. Due to the limited evidence presented during the sentencing phase, both in aggravation and extenuation and mitigation, we cannot conclude, beyond a reasonable doubt, that the error was harmless.

> ---
> [1] The witness did not testify about why appellant appeared before the D and A Boards or what recommendations were made by those boards. In addition, the government did not attempt to introduce other evidence concerning these proceedings, such as official records maintained by the United States Disciplinary Barracks.

29 MJ 885, 887 (1989).

We agree with the conclusion of the court below that Major Kurtz should not have been allowed to testify concerning King's frequent appearances before the Disciplinary and Adjustment Board—testimony which, when taken in context, made it clear that the accused had spent the previous year and a half in maximum custody because of frequent misconduct as a prisoner. RCM 1001(b)(5), Manual for Courts–Martial, United States, 1984, which concerns "evidence of rehabilitative potential," states that

> trial counsel may present, by testimony or oral deposition in accordance with R.C.M. 702(g)(1), evidence, in the form of opinions concerning the accused's previous performance as a servicemember and potential for rehabilitation. *On cross-examination, inquiry is allowable into relevant and specific instances of conduct.*

(Emphasis added.) The negative implication of this language is that, on direct examination, trial counsel may not inquire into "specific instances of conduct." *See United States v. Wingart*, 27 MJ 128 (CMA 1988).

## III

The certified issue is answered in the negative.

The decision of the United States Army Court of Military Review, setting aside the sentence, is affirmed.

Judge SULLIVAN concurs.

COX, Judge (concurring in part and dissenting as to result):

Whereas I agree that the form of the questions asked of Major Kurtz violated RCM 1001(b)(5),* which limits direct testimony of rehabilitation potential to "opinions," I am concerned that the Court of Military Review would reverse this accused's sentence. Art. 59(a), Uniform Code of Military Justice, 10 USC § 859(a).

The accused was tried for disobeying the lawful orders of Staff Sergeant Bridges, a corrections officer at the Fort Leavenworth Disciplinary Barracks, and for assaulting the sergeant while he was performing his duties at the prison.

Under the unique facts presented here, not only did the accused's obviously outrageous behavior (euphemistically called "uncharged misconduct") as a prisoner aggravate the offenses; it also represents his "service record" as a prisoner. RCM 1001(b)(2).

This evidence is relevant, probative, and helpful to someone trying to fashion an appropriate sentence for this recalcitrant prisoner. Because the prison records were admissible under the rules, I would remand the case to the Court of Military Review for further review under Article 66, UCMJ, 10 USC § 866.

---

* Manual for Courts–Martial, United States, 1984.