UNITED STATES, Appellee

v.

Kenneth E. DAVIS, Inmate (A person in the custody of the Armed Forces serving a sentence imposed by court-martial), Appellant.

No. 94–1305.
CMR No. 9301145.

U.S. Court of Appeals for the Armed Forces.

Argued Oct. 4, 1995.

Decided April 16, 1996.

the United States Disciplinary Barracks (USDB), Fort Leavenworth, Kansas. In June of 1993, he was found guilty by a general court-martial of conspiracy to escape and attempted escape from a confinement facility,[1] in violation of Articles 81 and 80, Uniform Code of Military Justice, 10 USC §§ 881 and 880, respectively. The military judge sentenced appellant to 3 years' confinement, and the convening authority approved this sentence on October 18, 1993. On August 9, 1994, the Court of Military Review[2] affirmed the findings and sentence.[3]

On January 25, 1995, this Court granted appellant's petition for review on the following issues:

## I

WHETHER THE MILITARY JUDGE COMMITTED PREJUDICIAL ERROR WHEN HE ADMITTED SHOEPRINT CASTINGS INTO EVIDENCE AND ALLOWED A GOVERNMENT WITNESS TO OPINE THAT THE CASTINGS MATCHED THE SOLES OF SHOES SEIZED FROM INMATE DAVIS' CELL WHEN THERE WAS NO EVIDENCE ESTABLISHING THE RELEVANCE OF THE SHOEPRINTS TO THE PRESENT CHARGES AND THE WITNESS WAS NOT OFFERED OR QUALIFIED AS AN EXPERT WITNESS.

## II

WHETHER THE EVIDENCE IS LEGALLY INSUFFICIENT TO SUPPORT

For Appellant: *Captain Norman R. Zamboni* (argued); *Lieutenant Colonel John T. Rucker and Major Roy H. Hewitt* (on brief); *Colonel Stephen D. Smith and Captain Teresa L. Norris.*

For Appellee: *Major Anthony P. Nicastro* (argued); *Colonel John M. Smith* (on brief); *Lieutenant Colonel Eva M. Novak.*

*Opinion of the Court*

SULLIVAN, Judge:

Appellant, Inmate Kenneth E. Davis, is a prisoner in custody of the Armed Forces at

1. The charge sheet (Appellant Exhibit I), the Recommendation of the Staff Judge Advocate, and the Court–Martial Order dated 18 October 1993, reflect that this offense occurred on or about 18 January 1993. The copy of the charges in the record of trial reflects the date as on or about 22 January 1993. (R. 11) The evidence indicates the attempted escape occurred on January 22, 1993. (R. 228–30.)

2. *See* 41 MJ 213, 229 n. * (1994).

3. One judge in the court below voted to affirm the findings and the approved sentence; a second judge also voted to affirm the findings, but found legal error as to the sentence and voted to affirm only 25 months' confinement; the third judge voted to set aside the findings and sentence for factual insufficiency of the evidence as to

both offenses. The second judge resolved this split by stating: "I dissent based on the foregoing legal rationale and not because I view the sentence approved by the convening authority as inappropriate. Accordingly, as we are evenly divided on whether to approve twenty-five or thirty-six months of confinement, I agree that the principal opinion (thirty-six months) prevails." Unpub. op. at 4. Since the equal division only relates to a question of law, that question is resolved by operation of law adversely to appellant. There is no equal division as to sentence appropriateness, which is a matter of fact. *See United States v. Ohrt,* 28 MJ 301, 303 (CMA 1989). Thus, the court below has affirmed the approved sentence of confinement for 3 years both as a matter of law and fact. *See* Art. 66(c), Uniform Code of Military Justice, 10 USC § 866(c).

THE FINDINGS OF GUILT BEYOND A REASONABLE DOUBT.

## III

WHETHER THE MILITARY JUDGE COMMITTED PLAIN ERROR WHEN HE ADMITTED INTO EVIDENCE DURING THE PRESENTENCING HEARING A PRIOR RECORD OF PUNISHMENT BY A DISCIPLINE AND ADJUSTMENT BOARD AS A PERSONNEL RECORD.

We resolve each of these issues in the Government's favor.

The Court of Military Review fully detailed appellant's criminal record causing his incarceration at Fort Leavenworth. It noted:

The appellant, a sentenced prisoner at the United States Disciplinary Barracks, Fort Leavenworth, Kansas, was incarcerated there because of two previous court-martial convictions. In 1981, he was convicted *inter alia* of kidnapping and robbery and sentenced to a dishonorable discharge, life imprisonment, forfeiture of all pay and allowances, and reduction to Private E1. The convening authority reduced the confinement to thirty years, and otherwise approved the sentence. After this court affirmed the appellant's conviction, the United States Court of Military Appeals affirmed our decision. *United States v. Davis*, 18 MJ 79 (CMA 1984). In June 1987, the appellant was convicted at a second general court-martial of escape from confinement from the Disciplinary Barracks, and was sentenced to confinement for eleven months. The convening authority approved the sentence. The record of trial was examined pursuant to Article 69(a), UCMJ, and was found to be legally sufficient. *United States v. Davis*, No. 8700886 (action by The Judge Advocate General, 13 July 1987).[1]

The appellant's most recent conviction by general court-martial resulted from his activities in January 1993 in conspiring to escape and attempting to escape from the Disciplinary Barracks with two other inmates, Waldron and Goff.

1. In addition, the appellant was tried by special court-martial in February 1985 and acquitted of attempted escape, and was tried by general court-martial in August 1988, and was acquitted of conspiracy to distribute marijuana. In July 1991, an administrative board found that the appellant had attempted to escape and aided another in escaping from the Disciplinary Barracks in March 1991. This misconduct apparently did not result in a court-martial. The military judge's consideration of this administrative action is an issue in the case before us.

Unpub. op. at 1–2 (footnote omitted).

At appellant's present court-martial, a question arose as to admissibility of prosecution evidence tending to show that appellant's shoeprints were found in the air vent tunnels used by his fellow prisoners, Inmates Waldron and Goff, as an escape route. Appellant describes this government evidence as follows:

Sergeant Gardner, MPI [military police investigator], testified that on January 23, 1993, the day after the attempted escape, he was briefed by SFC [Sergeant First Class] Cannon on the case. He was then ordered to take the DB Chief of Staff and the Director of Resources on a tour of the tunnels involved in order to show them what had taken place in the escape attempt. During this tour, he discovered and seized evidence that he believed was relevant to this case. (R. at 241.)

Part of the evidence discovered by SGT Gardner was footprints in the air vent tunnels under Building F, which is 5–wing. (R. at 227; 261) These footprints appeared to head towards the power plant so SGT Gardner made four separate plaster moldings of these prints. (*Id.*)

SGT Gardner testified that one of the moldings, Pros. Exh. 14, is a casting of a right Reebok SXT tennis shoe that visually matches INM Davis' shoes. He also testified that "on the other, the other mold that I made of this shoe, there are some identifying characteristics that can be seen with the eye." These moldings were sent to the crime lab and the lab examiner reported that INM Davis' shoe could have made this print. (R. at 262.)

Trial defense counsel objected to this evidence because there was no showing of

relevance to INM Davis and because SGT Gardner had "not been qualified as an expert in the area of taking footprints." The military judge overruled these objections because:

> it is relevant to the case, whether or not it is directly linked in itself to the testimony of Sergeant Gardner to your client, it is still relevant to attempts to escape by someone in the area. And second of all there wasn't any objection to the hearsay testimony that investigator Gardner just gave, that the crime lab reported that it was a match to the tennis shoe seized from the accused.

(R. at 263.) Sergeant Gardner then testified that he took a molding of two left shoe prints of the same Reebok type of shoe. (R. at 265; Pros. Exh. 15.) Trial defense counsel's objections on the same basis were again overruled. (R. at 266.)

Final Brief at 7–8.

— — —

I

■ Appellant's initial complaint is that the Government failed to show its shoeprint evidence was relevant to his court-martial. Mil.R.Evid. 401 and 402, Manual for Courts-Martial, United States, 1984. He argues that no clear evidence was presented by the prosecution linking him to these shoeprints. He notes that the record of trial establishes that many persons used these tunnels and that he was wearing a different pair of sneakers on the day of the escape. He also notes that no evidence was admitted to show how many inmates own this type of sneaker or that some other inmate did not borrow these sneakers to make these shoeprints. Accordingly, he submits that the military judge should have rejected this evidence as irrelevant.

Mil.R.Evid. 401 states:

**Definition of "relevant evidence"**

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Mil.R.Evid. 402 provides that "[a]ll relevant evidence is admissible," with certain exceptions, and that irrelevant evidence is inadmissible.

The issue of consequence in appellant's case was whether he was actively involved in the attempt of his fellow prisoners to escape from Fort Leavenworth on January 22, 1993. This Court and others have recognized that a shoe or sneaker print can be considered trace evidence, *i.e.,* having some tendency to show that the maker of the print was present where the print was found. *See generally United States v. Youngberg,* 43 MJ 379 (1995); *People v. Campbell,* 146 Ill.2d 363, 166 Ill.Dec. 932, 586 N.E.2d 1261 (1992); 2 Wigmore, *Evidence* § 415 (Chadbourn rev. 1979). In this case evidence was admitted that the challenged shoeprints were found shortly after the escape on the very route of Waldron and Goff and in an area which was generally prohibited to prison inmates. Evidence was also admitted that appellant owned sneakers which "could have" made these prints. In view of this evidentiary foundation, appellant's linkage complaints relate more appropriately to the weight to be afforded by the factfinder to the challenged evidence. *See generally People v. Campbell, supra* at 1268–69; Wigmore, *supra,* § 415.

■ Appellant also asserts that this shoeprint evidence should not have been admitted because Sergeant (SGT) Gardner was not a qualified expert in shoeprint analysis or shoeprint casting. Appellant in his final brief indicated the importance of the first qualification question, stating: "In this case, the Government had a forensic lab examiner evaluate the evidence and state only that INM Davis' shoe *could have made the suspect shoeprints. Sergeant Gardner then contradicted the lab report and stated* that the wear pattern of INM Davis' shoe matched the wear pattern on the mold." Final Brief at 11 (emphasis added). He argues that the military judge committed prejudicial error in admitting this incriminating testimony from SGT Gardner.

As a starting point, we note that appellant overstates the nature of the testimony by SGT Gardner. He did not actually testify

that it was his expert opinion that the shoe-prints in the tunnel were made by appellant's sneakers. He did testify that a forensic laboratory opined that these shoeprints "could have" been made by appellant's sneakers. He also testified that the shoeprints were made by Reebok SXTs and Chuckie—Converse–Taylors and that appellant "had those type shoes." He further testified:

> Again, the only comparison I made was stuff that you can visually see. *These are the type of comparisons that all investigators use in order to send stuff to the crime lab.* Like I said before, the wear pattern on the rear of the right shoe was prevalent and it was also prevalent in the casting itself. *And for the reason of that, it was sent off to the Crime Lab.*

(Emphasis added.) Finally, we note that SGT Gardner testified that the shoeprint in question "matches by the eye ... the shoe of" appellant.

In addition, we note that this was a trial by judge alone and that the judge specifically ruled that SGT Gardner could only testify as to "what similarities he finds." Such a ruling by the judge followed an express objection by the defense to expert testimony by this police investigator, stated in these terms:

> DC: My objection is on two grounds. First, that that is calling for testimony of a forensic nature. It is very similar to testimony about fingerprints, if you ask somebody to identify fingerprints, to compare them. There has been no showing that Sergeant Gardner is an expert in any way, shape, or form of this type of forensic evidence. Secondly, I object to it on the grounds of relevancy. What Sergeant Gardner is attempting to do is rebut or contradict or somehow undermine what the Army's own expert in this area have said. Now he is going to sit there and say, I made these determinations, that these are probably the same shoe when their own experts at the lab where he sent this stuff to be checked out, say, well for lack of better comparison we can only say that these prints could have been caused by my client's shoes. So, lack of personal knowledge and relevancy and allowing him to testify is more prejudicial than it is rele-

vant, given what we know about what the Army Crime Lab has said.

It also followed defense argument that an evidentiary foundation as to SGT Gardner's qualifications as an expert was required to admit such testimony.

■ In this context, we construe the military judge's ruling as precluding any expert opinion testimony from SGT Gardner as to whether these shoeprints matched. Instead, his ruling limited consideration of this witness' testimony to that part pointing .out various physical similarities between the molds and appellant's sneakers. *See also United States v. Tyler,* 17 MJ 381, 385 (CMA 1984) (helpful opinion of non-expert admissible under Mil.R.Evid. 702). It was the physical similarities themselves, *i.e.,* shoe size, shoe type, and pattern wear which constituted demonstrative evidence offered to the factfinder for his own evaluation. *See generally* 3 *Wharton's Criminal Evidence* § 598 (C. Torcia 14th ed.1987). When a judge indicates that he will not consider inadmissible evidence, including expert opinion testimony, we presume he will do as he says. *See United States v. Corraine,* 31 MJ 102, 107 (CMA 1990).

Appellant finally argues that all the shoeprint evidence in this case was inadmissible because the prosecution failed to show Sgt Gardner was properly trained to take shoeprint castings. This particular evidentiary objection was not made at trial. *See* Mil. R.Evid. 103(a). Moreover, Defense Exhibit O clearly indicates that the quality of casting supplied to the laboratory was "suitable for comparison" purposes, and this report was not objected to by the defense. In this context, we find no prejudicial error. Art. 59(a), UCMJ, 10 USC § 859(a).

## II

■ The second issue in this case is whether the evidence of record was legally sufficient to establish appellant's guilt of attempted escape and conspiracy to escape from the military prison at Fort Leavenworth. Our standard of review for resolving such questions is well established. *See gen-*

*erally Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). It is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner,* 25 MJ 324 (CMA 1987); *United States v. Harper,* 22 MJ 157, 161 (CMA 1986). That standard was met in this case.

Appellant was found guilty of conspiracy to escape in Charge I. Its specification states:

> Specification: In that [appellant] did, at the USDB [United States Disciplinary Barracks], between 1 and 22 January 1993, conspire with Inmate Damien Waldron and Inmate Donald Goff to commit an offense under the Uniform Code of Military Justice, to wit: escape from post-trial confinement, and in order to effect the object of the conspiracy the said Inmate Damien Waldron or Inmate Donald Goff, or Inmate Kenneth Davis did break the safety fence at the rear of 8–tier, 3 Wing, break open an air vent hatch, enter maintenance and access vents and tunnels which were off limits to inmates, break the hasp on the 0–tier lower rotunda security hatch, and saw through a bar between the power plant and the west tunnels; the said Inmate Donald Goff and Inmate Kenneth Davis did enter maintenance vents and tunnels which were off limits to inmates.

He was also found guilty of attempted escape in Charge II. Its specification states:

> Specification: In that [appellant], having been placed in confinement in the USDB, by a person authorized to order the accused into confinement, did, at the USDB, on or about 18 January 1993, attempt to escape from confinement.[4]

Inmates Waldron and Goff were seen by prison authorities attempting to escape and were literally caught in the act of escaping during an ensuing prison lockdown. Appellant, however, was not observed escaping and, in fact, was eating in the prison mess hall during the escape attempt on January 22, 1993. The Government's theory of guilt in this case was that appellant aided and abetted his fellow inmates in their escape attempt.[5] Art. 77, UCMJ, 10 USC § 877; and para. 1, Part IV, Manual, *supra.*

Article 77 states:

> Any person .... who
>
> > (1) commits an offense .... or aids, abets, counsels, commands or procures its commission ...
>
> is a principal.

This Court has held that, under this statute, a person who aids and abets another to commit an offense may also be found guilty of that offense. *See United States v. Jones,* 37 MJ 459 (CMA 1993). Here, the evidence of record clearly shows that Inmates Waldron and Goff attempted to escape from Fort Leavenworth Prison on January 22, 1993. Arts. 80 and 95, UCMJ, 10 USC §§ 880 and 895, respectively; para. 19, Part IV, Manual, *supra.* Our concern is whether there was a showing of "sufficient knowledge and participation to indicate that he [appellant] knowingly and willfully participated in the offense [of Waldron and Goff] in a manner that indicated he [appellant] intended to make it succeed...." *United States v. Pritchett,* 31 MJ 213, 217 (CMA 1990), *quoting United States v. Raper,* 676 F.2d 841, 849 (D.C.Cir.1982).

In resolving this question, we initially consider the testimony of the prison informant, Inmate JM. He lived on the same tier as appellant (8–Tier) but in a different cell. He testified that prior to the escape on January 22, 1993, he observed numerous unauthorized meetings between Waldron, Goff, and appellant on 8–Tier in appellant's cell. He further testified that, during this period, he also heard strange noises in an off-limits area above 8–Tier and noticed at the time that these three inmates were often missing or unable to be located. Finally, he testified that he confronted appellant with his suspi-

---

4. *See* n. 1, *supra.*

5. The military judge expressly ruled that the prosecution's alternative theory of attempted es-

cape (appellant tried to escape on January 18, 1993, as evidenced by the scratches he showed to Marrero) was not supported by sufficient evidence in the record.

cions about *their* escape or plans to do the same on January 18, 1993, which appellant at least implicitly acknowledged. This evidence was sufficient for a reasonable factfinder to find beyond a reasonable doubt that appellant purposefully associated with Waldron and Goff for the purpose of escaping from the disciplinary barracks.

Turning to the question of appellant's participation in the escape attempt of Waldron and Goff, we note other evidence in the record of trial. First, Inmate M testified that the regular meeting place of the three inmates was appellant's cell on 8–Tier, a place to which Waldron and Goff, who lived on 5–Tier, did not normally have access. It was further established that Waldron and Goff gained access to the tunnels and passageways for their escape through a broken screen vent in the ceiling of 8–Tier near appellant's cell. M also testified that appellant showed him "scratches" on his body which might have been caused by his altering certain fence barriers on the escape route. Finally, some evidence of appellant's shoeprints was found in the tunnel, suggesting his presence there at some time. In view of all this evidence, we also conclude that a reasonable factfinder could find beyond a reasonable doubt that appellant voluntarily participated in Inmates Waldron and Goff's escape attempt.

### III

■ The final issue granted review in this case is whether the military judge improperly sentenced appellant on the basis of prior misconduct evidenced in a prison Discipline and Adjustment Board Report. Prosecution Exhibit 26 was offered by the Government as his "service record as a prisoner," admissible under RCM 1001(b)(2), Manual, *supra.* Defense counsel objected to admission of this evidence because it was not a criminal conviction; it violated the decision of this Court in *United States v. King,* 30 MJ 334 (CMA 1990); and it was not shown that he was afforded an opportunity to consult with counsel.[6] On appeal appellate defense counsel further claim inadmissibility because this re-

6. This objection has not been pursued on appeal.

port "was not a personnel record" within the meaning of AR 640–10, Personnel Records and Identification of Individuals: Individual Military Personnel Records (Aug. 31, 1989). The military judge ruled that our decision in *King* did not address admission of personnel records under RCM 1001(b)(2) and admitted this evidence under that rule.

The challenged evidence was described by the Court of Military Review as follows:

The appellant also asserts that the military judge erred in admitting into evidence during the sentencing hearing a record of the Disciplinary [sic] and Adjustment (D & A) Board pertaining to the "administrative disciplinary sanctions" imposed upon the appellant following the appellant's attempt to escape from the Disciplinary Barracks in 1991. We find that the issue was waived by counsel's failure to specifically object.

The approximately thirty-page D & A Board report is divided into two parts. The first part is a three-page summarization and authentication containing the board's recommendation and the Commandant's action on the recommendation. Also contained in this part are notations that the appellant had been the subject of thirty-eight prior disciplinary reports and that "[t]his is Inmate Davis' 38th board." The second part, is the "record of proceedings," approximately twenty-seven pages in length, containing the information used by the board in arriving at its recommendation, including police blotter entries, statements of witnesses, and a certificate of legal review of the proceedings.

Unpub. op. at 2–3 (footnote omitted).

We note that appellant's initial objection to admission of this evidence was that it did not constitute in fact or law a criminal conviction. *See* RCM 1001(b)(3). This objection is clearly without merit since the D & A Board Report was admitted under RCM 1001(b)(2) (Personal data and character of prior service of the accused), not RCM 1001(b)(3) (Evidence of prior convictions of the accused). We also agree with the judge that the decision of this Court in *United States v. King,*

*supra*, does not determine the particular admissibility question under RCM 1001(b)(2). There, the issue was whether testimony concerning King's appearance before "19 D & A Boards" was properly adduced from a government witness on direct examination in light of RCM 1001(b)(5) (opinion testimony on an accused's military character allowed on direct; inquiry "allowable into relevant and specific instances of conduct" on cross-examination).

■ In appellant's case, the challenged report was maintained in the prisoner's "correctional treatment file" and was admitted at his court-martial under authority of RCM 1001(b)(2). *See* para. 2–1, *United States Disciplinary Barracks Regulation 15–1 (June 1990); see generally United States v. Zakaria*, 38 MJ 280, 282 (CMA 1993); *cf. United States v. King*, 30 MJ at 336 (citing n. 1 of CMR opinion noting no such record presented in *King* ). RCM 1001(b)(2) states: " 'Personnel records of the accused' includes *any records* made or maintained in accordance *with departmental regulations* that reflect past military efficiency, *conduct, performance*, and *history of the accused.*" (Emphasis added.) *See generally United States v. Vaughan*, 3 USCMA 121, 124, 11 CMR 121, 124 (1953) ("[T]he commandant of a military disciplinary barracks ... is at the same time a *prison warden* and the *military commander* set over the men confined in his penal institution.") Whether this report in part or in its entirety was admissible under this rule as a departmental regulation record need not be decided in this case. *See generally* Chapter 9, § II, ¶¶ 5–5 and 6–4(j), Army Regulation 190–47, Military Police: The United States Army Correctional System (Oct.1978). Appellant failed to object to admission of this evidence on this basis, unpub. op. at 3, so a finding of waiver is appropriate. *See* Mil.R.Evid. 103(a)(1) and RCM 1001(b)(2). Accordingly, we conclude that a new sentencing hearing is not warranted in this case.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge COX, Judge CRAWFORD, and Senior Judge DARDEN concur.

GIERKE, Judge (concurring in part and in the result).

I agree with the majority that the evidence is legally sufficient to support appellant's convictions of conspiracy and attempted escape. Accordingly, I join the majority in resolving Issue II against appellant.

Concerning Issue I, I believe that Sergeant (SGT) Gardner's testimony is permissible lay testimony under Mil.R.Evid. 701, Manual for Courts–Martial, United States, 1984. *See United States v. Tyler*, 17 MJ 381, 384–85 (CMA 1984). Any opinions he expressed were "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the testimony of the witness of the determination of a fact in issue." Expert testimony concerning the shoe prints was provided by the crime laboratory, not SGT Gardner. Furthermore, once the laboratory report was received in evidence, any possibility of prejudice from SGT Gardner's testimony was eliminated.

Concerning Issue III, I am unwilling to hold that the discipline and adjustment board report is a "personnel record" within the meaning of RCM 1001(b)(2), Manual, *supra*. This rule applies only to "records made or maintained in accordance with departmental regulations." The term "departmental regulations" does not include regulations of local field commands such as United States Disciplinary Barracks (USDB) Regulation 15–1, cited by the majority.

Army Regulation (AR) 190–47, also cited by the majority, does qualify as a "departmental regulation," but it contains only procedural guidance and does not authorize maintaining discipline and adjustment board reports in a prisoner's personnel records. To the contrary, paragraph 5–5 mandates that documents in a "correctional treatment file" be kept "separate from personnel records."

Furthermore, paragraph 9–14b(4), AR 190–47, provides that board recommendations "are advisory in nature." Thus, a board report is not a record of action taken, but only a recommendation for action to be

taken by the Commandant, USDB. The relevant "record" is the record of action taken by the Commandant, not the board's recommendation or the evidence supporting that recommendation.

Nevertheless, appellant did not assert at trial that the report was not a "personnel record" within the meaning of RCM 1001(b)(2). Accordingly, I agree with the court below and the majority here that this objection was waived in the absence of plain error. *See* RCM 1001(b)(2) ("Objections not asserted are waived."). I am satisfied that its admission was not plain error. Therefore, I concur in resolving this issue against appellant, on the ground that the objection was waived.