*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
HOLIFIELD, STEWART, and HACKEL
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Travonte D. WILLIAMS**
Private First Class (E-2), U.S. Marine Corps
*Appellant*

**No. 202100094**

_____

Decided: 5 October 2022

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
K. Scott Woodard (motions)
Kyle G. Phillips (arraignment and trial)

Sentence adjudged 10 December 2020 by a general court-martial convened at Marine Corps Base Camp Lejeune, North Carolina, consisting of officer and enlisted members. Sentence in the Entry of Judgment: reduction to E-1, confinement for 11 years, forfeiture of all pay and allowances, and a dishonorable discharge.[1]

For Appellant:
*Major Mary Claire Finnen, USMC*

---

[1] Appellant was credited with having served 377 days of pretrial confinement.

For Appellee:
*Captain Tyler W. Blair, USMC*
*Lieutenant Gregory A. Rustico, JAGC, USN*

Senior Judge STEWART delivered the opinion of the Court, in which Chief Judge HOLIFIELD and Judge HACKEL joined.

————————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

————————————————

STEWART, Senior Judge:

Appellant was convicted, contrary to his pleas, of one specification of sexual assault, one specification of abusive sexual contact, one specification of assault consummated by a battery, and one specification of assault, in violation of Articles 120 and 128, Uniform Code of Military Justice [UCMJ],[2] for sexually assaulting Ms. Washington, touching the buttocks of Lance Corporal [LCpl] Whiskey, striking Ms. Michaels on the head with his hand, and holding a knife to the face and neck of Ms. Washington.[3]

Appellant asserts nine assignments of error [AOEs], which we combine and renumber as follows: (1) Appellant's convictions for sexual assault and abusive sexual contact are legally and factually insufficient; (2) Appellant's convictions for assault and assault consummated by a battery are factually insufficient; (3) Appellant received ineffective assistance of counsel; (4) trial counsel committed misconduct by repeatedly misstating the evidence in closing arguments, as well as improperly using propensity evidence; (5) the military judge abused his discretion when he admitted Appellant's brig observational and disciplinary reports into evidence; and (6) Appellant's right to a unanimous verdict was violated.[4] We find no prejudicial error and affirm.

---

[2] 10 U.S.C. §§ 920, 928.

[3] All names in this in this opinion other than Appellant, the judges, and appellate counsel are pseudonyms.

[4] We find Appellant's sixth AOE lacks merit. *See United States v. Causey*, 82 M.J. 574, 586-87 (N-M Ct. Crim App. 2022) (declining to extend the holding in *Ramos v.*

2

## I. BACKGROUND

Appellant was convicted of offenses against multiple victims, all of which occurred during 2019.

### 1. Abusive Sexual Contact of LCpl Whiskey

In February, 2019, Appellant and LCpl Whiskey were living in the same barracks. According to LCpl Whiskey, the two were not friends. However, she agreed to go skating with Appellant because no one else wanted to go. When Appellant tried to pay for her admission to the skating rink, LCpl Whiskey told him that it was not a date and paid for herself. During their time at the skating rink, Appellant attempted to put his arm around LCpl Whiskey, but she brushed it off.

After sharing a taxi back to the barracks, Appellant walked LCpl Whiskey to her room. He left, but returned and asked for a goodnight hug. They hugged goodnight and, while hugging her, Appellant grabbed LCpl Whiskey's buttocks without her consent. She immediately moved him out of her room and closed the door. She did not report the incident immediately, but revealed what had happened three months later when she was interviewed concerning Appellant's conduct involving another victim.

### 2. Sexual Assault and Assault of Ms. Washington

During the summer of 2019, Appellant met Ms. Washington through a mobile phone software application called Monkey. After chatting for a few weeks, Ms. Washington and Appellant agreed to meet. Appellant drove to Ms. Washington's home and the two of them watched television in her bedroom and kissed. Appellant offered to give Ms. Washington a back massage because she had muscle damage in her back and Ms. Washington agreed. She lay down on her stomach and Appellant began massaging her. He then proceeded to pull down Ms. Washington's shorts and underwear. She asked him why he was doing that and explained that only her back hurt. Appellant then held Ms. Washington's wrists and penetrated her vagina with his penis. Ms. Washington struggled to get up, and Appellant stopped and got off the bed. She got off the bed and pulled her shorts back up, then told Appellant he needed to leave. Ms. Washington walked Appellant to his car and watched him drive away. She then took a shower, sat in bed, and cried. She did not immediately report the assault to law enforcement, but she told her sister what had happened and had

---

*Louisiana*, 140 S.Ct. 1390 (2020), to courts-martial). *United States v. Matias,* 25 M.J. 356 (C.M.A. 1987).

her sister drive her to the store to purchase a morning-after emergency contraception pill.

Approximately one month later Appellant returned to the house to talk to Ms. Washington. Appellant asked if they could talk in her bedroom, but Ms. Washington insisted they talk outside where her Ring security system would record everything.[5] Appellant and Ms. Washington talked for a few minutes before Appellant brandished a pocketknife and held it up to Ms. Washington's face. Appellant pulled her closer to his car, holding the knife against her. While holding the knife against her face he asked, "what if [I] cut [you] here?" He then he moved the knife down to her neck and asked, "what if [I] cut [you] here, too?"[6] Appellant put the knife away, blocked her from entering the door to her home and then, after several failed attempts, forced Ms. Washington into the back seat of his car. Ms. Washington struggled with Appellant and eventually got out of the back seat. Appellant then told to Ms. Washington that he may have given her a sexually transmitted disease. Ms. Washington ran off and Appellant drove away. Appellant then called Ms. Washington and told her she should get tested. At this point Ms. Washington called the police to report Appellant's actions.

### 3. Assault of Ms. Michaels

In November of 2019, Ms. Michaels met Appellant via a software application called MeetMe. After talking, Appellant and Ms. Michaels agreed to meet and go out to eat. Appellant picked up Ms. Michaels near her house, but instead of driving to a restaurant he drove her to a secluded area and parked off the road. Appellant asked Ms. Michaels what they were about to do, to which she replied "You can take me home."[7] Appellant attempted to persuade Ms. Michaels to have sex with him, but she was adamant that she was not interested.

While they continued to sit in his car, Appellant became angry that Ms. Michaels was on her phone and attempted to take it from her. He pulled her hair and hit her in the face. Appellant then took the phone from Ms. Michaels, but gave it back when she threatened to use mace on him. Appellant then snatched the mace out of her hand and threatened to mace her if she did not get into the back seat. Ms. Michaels got into the back seat with Appellant, but remained adamant that she was not going to have sex with him. Appellant

---

[5] Pros. Ex. 9. The ring video did not capture Appellant's actions as the front porch pillar obscures Appellant and Ms. Washington as they approached his car.

[6] R. 669.

[7] R. 548.

again became violent and tried to pull Ms. Michaels toward him. She fought back and was able to get out of the car. She screamed for help and ran toward the road, where, after a few minutes, she was able to flag down two police officers. Appellant sped away once Ms. Michaels left the car.

Ms. Michaels suffered a split lip from Appellant's attack. She immediately reported the incident to law enforcement.

Additional facts necessary to address the AOEs are provided below.

## II. DISCUSSION

### A. Appellant's Convictions are Legally and Factually Sufficient

Appellant asserts the evidence is legally and factually insufficient to support his convictions for sexual assault and abusive sexual contact. He asserts that the evidence is factually insufficient to support his convictions for assault consummated by a battery and simple assault.[8] We review such questions de novo.[9]

To determine legal sufficiency, we ask whether, "considering the evidence in the light most favorable to the prosecution, a reasonable fact-finder could have found all the essential elements beyond a reasonable doubt."[10] In conducting this analysis, we must "draw every reasonable inference from the evidence of record in favor of the prosecution."[11]

In evaluating factual sufficiency, we determine "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we] are . . . convinced of the [appellant's] guilt beyond a reasonable doubt."[12] In conducting this unique appellate function, we take "a fresh, impartial look at the evidence," applying "neither a presumption

---

[8] Although Appellant does not challenge the legal sufficiency of his convictions for assault consummated by a battery and simple assault we nevertheless review the legal sufficiency of every offense in accordance with our mandate under Article 66, UCMJ.

[9] Article 66(d)(1), UCMJ; *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

[10] *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

[11] *United States v. Gutierrez*, 74 M.J. 61, 65 (C.A.A.F. 2015) (citation and internal quotation marks omitted).

[12] *Turner*, 25 M.J. at 325.

of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt."[13] Proof beyond a "[r]easonable doubt, however, does not mean the evidence must be free from conflict."[14]

### 1. Sexual Assault and Simple Assault

Appellant was found guilty of sexually assaulting Ms. Washington on or about 16 July 2019, for committing a sexual act upon Ms. Washington by penetrating her vulva with his penis without her consent. He was additionally found guilty of simple assault against Ms. Washington on or about 15 August 2019 for holding a knife to her face and neck.

To prove sexual assault as charged, the Government was required to prove that: (1) Appellant committed a sexual act upon Ms. Washington by causing penetration, however slight, of the vulva by the penis; and (2) he did so without Ms. Washington's consent.[15]

To prove simple assault as charged, the Government was required to prove that: (1) Appellant attempted to do or offered to do bodily harm to Ms. Washington; (2) the attempt or offer was done unlawfully; and (3) the attempt or offer was done with force or violence.[16]

Ms. Washington testified that Appellant penetrated her vulva with his penis, and that he did so without her consent. Ms. Washington further testified that Appellant grabbed her and brandished a pocket knife, holding the knife against her face and neck and asking "what if [I] cut [you] here?"[17]

### 2. Abusive Sexual Contact

Appellant was convicted of abusive sexual contact upon LCpl Whiskey between on or about 1 February 2019 and 28 February 2019, by touching her buttocks without her consent and with the intent to arouse his sexual desire.

To prove the offense as charged, the Government was required to prove that: (1) Appellant committed sexual contact upon LCpl Whiskey by touching

---

[13] *Washington*, 57 M.J. at 399.

[14] *United States v. Rankin,* 63 M.J. 552, 557 (N-M. Ct. Crim. App. 2006).

[15] Art. 120, UCMJ.

[16] Art. 128, UCMJ.

[17] R. at 669.

her buttocks with his hand with the intent to gratify or arouse his sexual desire; and (2) he did so without LCpl Whiskey's consent.[18] "Intent can be shown by circumstantial evidence."[19]

Lance Corporal Whiskey testified that there was no romantic relationship between her and Appellant. She agreed to go ice-skating with him because no one else was willing to go, but she was clear that it was not a date. She further testified that after getting back to the barracks, Appellant hugged her goodnight and grabbed her buttocks without her consent. Appellant's actions of grabbing LCpl Whiskey's buttocks, as well as his earlier attempt to put his arm around her at the skating rink, provide circumstantial evidence that the grabbing was done with the intent to arouse his sexual desire.

### 3. Assault Consummated by a Battery

Appellant was found guilty of assaulting Ms. Michaels by striking her in the head with his hand.

To prove the offense as charged, the Government was required to prove that: (1) Appellant did bodily harm to Ms. Michaels by striking her in the head with his hand; (2) the bodily harm was done unlawfully; and (3) the bodily harm was done with force or violence.[20] Bodily harm means "an offensive touching of another, however slight."[21]

Ms. Michaels testified that Appellant drove her to a secluded area, where he attempted to persuade her to have sex. Appellant became angry when Ms. Michaels was on her phone and attempted to take it away from her. She testified that when he tried to take her phone Appellant pulled her hair and struck her in the head with his hand.

### 4. Appellant's Convictions are Legally and Factually Sufficient

After weighing the evidence in the record of trial, and making every reasonable inference in favor of the prosecution, we are satisfied a reasonable factfinder could have found all the essential elements of each charge and specification beyond a reasonable doubt and are legally sufficient to support Appellant's convictions. Furthermore, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses,

---

[18] Art. 120, UCMJ.

[19] *United States v. Acevedo*, 77 M.J. 185, 189 (C.A.A.F. 2018).

[20] Art. 128, UCMJ.

[21] *Manual for Courts-Martial, United States*, (2019 Ed.), pt. IV, para 77(c)(1)(a) at IV-118.

we are convinced of Appellant's guilt beyond a reasonable doubt and find that the evidence is factually sufficient to support Appellant's convictions.

## B. Trial Defense Counsel were Not Ineffective

Appellant asserts that his trial defense counsel were ineffective for failing to move to suppress the statement Appellant made to law enforcement and for failing to object to portions of trial counsel's closing, rebuttal, and sentencing arguments.

We review claims of ineffective assistance of counsel de novo.[22] To prevail on such a claim, "an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice."[23] The appellant bears the "burden of establishing the truth of factual matters relevant to the claim."[24] Only after an appellant has met his burden and has demonstrated both deficiency and prejudice can we find in the appellant's favor on an ineffective assistance of counsel claim.[25]

To establish the element of deficiency, an appellant must first overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[26] A military appellate court "will not second-guess the strategic or tactical decisions made at trial by defense counsel."[27] If an appellant raises the issue of ineffective assistance of counsel based upon a challenge against the trial strategy or tactics of the defense counsel, "the appellant must show specific defects in counsel's performance that were 'unreasonable under prevailing professional norms.'"[28] Only after an appellant has met his burden and has demonstrated both deficiency and prejudice can we

---

[22] *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009); *United States v. Cooper*, 80 M.J. 664, 672 (N-M. Ct. Crim. App. 2020).

[23] *United States v. Green*, 68 M.J. 360, 361-62 (C.A.A.F. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)) (other citation omitted).

[24] *Denedo v. United States*, 66 M.J. 114, 128 (C.A.A.F. 2008).

[25] *Cooper*, 80 M.J. at 672.

[26] *United States v. Scott*, 81 M.J. 79, 84 (C.A.A.F. 2021) (quoting *Strickland*, 466 U.S. at 489).

[27] *United States v. Anderson*, 55 M.J. 198, 201 (C.A.A.F. 2001) (quoting *United States v. Morgan*, 37 M.J. 407, 410 (C.M.A. 1993)).

[28] *Mazza*, 67 M.J. at 475 (quoting *United States v. Perez*, 64 M.J. 239, 243 (C.A.A.F. 2006)) (cleaned up).

find in the appellant's favor on an ineffective assistance of counsel claim.[29] Strategic decisions to accept or forgo a potential benefit are not deficient when the decisions are objectively reasonable.[30] Furthermore, "it is not necessary to decide the issue of deficient performance when it is apparent that the alleged deficiency has not caused prejudice."[31]

### 1. *Trial Defense Counsels' tactical decision not to challenge Appellant's statement was reasonable*

"[W]hen a claim of ineffective assistance of counsel is premised on counsel's failure to make a motion . . . an appellant must show that there is a reasonable probability that such a motion would have been meritorious."[32] In this regard, the term "meritorious" is synonymous with "successful."[33] "[T]he decisional issue is whether Appellant has carried his burden to show that his counsel would have been successful if he filed a timely motion."[34]

Appellant argues that his statements made to law enforcement during his interrogation by Detective Lima of the New Hanover County Sheriff's Office should have been suppressed because Appellant was not advised of his rights under Article 31(b), UCMJ, before being questioned.

According to Article 31(b), UCMJ,

> No person subject to this chapter may interrogate, or request any statement from an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made

---

[29] *Cooper*, 80 M.J. at 672.

[30] *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012).

[31] *United States v. Bradley*, 71 M.J. 13, 16 (C.A.A.F. 2012). *See also, Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.").

[32] *United States v. Jameson*, 65 M.J. 160, 163-64 (C.A.A.F. 2007) (quoting *United States v. McConnell*, 55 M.J. 479, 482 (C.A.A.F 2001) (motion to suppress evidence)).

[33] *Id.* at 164.

[34] *Id.*

by him may be used as evidence against him in a
trial by court-martial.[35]

Additionally, under Military Rule of Evidence [Mil. R. Evid.] 305, "person subject to the code" includes "a knowing agent of any such person."[36] Our superior Court has explained that there are at least two scenarios in which civilian law enforcement officers such as Detective Lima working with military investigators must comply with Article 31(b): "(1) When the scope and character of the cooperative efforts demonstrate 'that the two investigations merged into an indivisible entity' and (2) when the civilian investigator acts in furtherance of any military investigation, or in any sense as an instrument of the military."[37]

In this case, Appellant was interrogated by Detective Lima while Special Agent [SA] Simmons of the Naval Criminal Investigative Service [NCIS] was in the room observing the interrogation. Appellant was read his *Miranda* rights by Detective Lima before questioning but was not given specific warnings under Art. 31(b).[38] When Detective Lima concluded his interview, SA Simmons conducted his own interrogation after advising Appellant of his 31(b) warnings. Prior to interrogating Appellant, Detective Lima had discovered through several law enforcement databases that NCIS was also separately investigating Appellant on multiple allegations of sexual assault. He spoke with another NCIS agent, SA Franks, multiple times to coordinate an interview with Appellant. He met with SA Franks the day before the interview and exchanged investigation reports with her as he continued investigating Ms. Washington's allegations.

In their declarations on the issue, trial defense counsel explained that they discussed the possibility of moving to suppress Appellant's statements but ultimately made a tactical decision not to do so because allowing the statements into evidence was more beneficial to Appellant's case than it was harmful. Specifically, trial defense counsel explained that the admissions made by Appellant during the interrogation helped raise the argument that Ms. Washington

---

[35] Art. 31(b), UCMJ.

[36] Mil. R. Evid. 305(b)(1).

[37] *United States v. Brisbane*, 63 M.J. 106, 111 (C.A.A.F. 2006) (internal quotations and citations omitted).

[38] *Miranda v. Arizona*, 384 U.S. 436 (1966).

only made her allegation of sexual assault after Appellant informed her that he may have given her a sexually transmitted disease.[39]

Appellant has failed to demonstrate that trial defense counsels' tactical decision to allow his statements into evidence was "unreasonable under prevailing professional norms."[40] Even if we assume trial defense counsels' decision was unreasonable, Appellant has failed to show that a motion to suppress his statements made to Detective Lima would have been meritorious. Although SA Simmons was present during Detective Lima's interrogation, the record does not demonstrate that the two investigations merged into an indivisible entity, nor that Detective Lima was acting in furtherance of any military investigation. During Detective Lima's interrogation, SA Simmons remained a passive bystander and did not question Appellant until he conducted his own interrogation later. Appellant argues that Detective Lima and SA Simmons discussed the interrogation before Detective Lima asked Appellant additional questions. However, this discussion does not demonstrate that Detective Lima's additional questions were in furtherance of SA Simmons's investigation. Indeed, rather than have Detective Lima ask questions for him, SA Simmons conducted his own interrogation of Appellant after Detective Lima had finished.

Because Appellant has failed to prove that trial defense counsel's tactical decision not to challenge the admission of his statements to Detective Lima was unreasonable and has further failed to demonstrate that a motion to suppress those statements had a reasonable probability of success, he fails to show that his trial defense counsel were ineffective for failing to file a motion to suppress based on the alleged violation of Article 31(b). Furthermore, even assuming that a motion to suppress Appellant's statements would have been successful, we do not believe that the suppression of such evidence would have resulted in a different result at trial as the weight of evidence rested with the testimony of the victims. Moreover, the statement on its face permitted Appellant to provide his account without being subjected to cross-examination. We thus find that Appellant has failed to establish he was prejudiced by trial defense counsels' alleged error.

---

[39] Contrary to Appellant's claim in his brief, his denial of sexual assault and later admission that he returned at a later date to inform Ms. Washington that he may have given her a sexually transmitted disease are not contradictory under these facts. During his interrogation, Appellant explained to Detective Lima that he kissed Ms. Washington and believed that he may have transmitted something to her while kissing. He continued to deny that he ever engaged in sexual intercourse with Ms. Washington.

[40] *Mazza*, 67 M.J. at 475 (internal citation and quotation omitted).

2. *Trial defense counsels' tactical decision not to object to trial counsel's closing, rebuttal, and sentencing arguments was reasonable*

Appellant argues that his trial defense counsel were ineffective for failing to object during trial counsel's closing, rebuttal, and sentencing arguments in that trial counsel misstated Ms. Washington's testimony by claiming that she told Appellant "no" and "stop."[41]

Trial counsel argued,

> The defense counsel focused on reasonable mistake of fact as to consent, meaning if he reasonably believed she wanted to have sex then he's not guilty. Well, he may have believed that at some point. But the second she said; no. Stop. What are you doing? Trying to pull her shorts up; no. What are you doing? Stop. The second she did that, that defense is eliminated. And that's what happened in this case.[42]

When Ms. Washington testified that, shortly after asking Appellant "what are you doing?" and "why?" Appellant pinned her hands above her head while she was still lying face down on the bed. Once Appellant inserted his penis into Ms. Washington's vagina against her will, she detailed how she "gritted her teeth and tr[ied] to raise up," as an attempt to get Appellant off of her. Ms. Washington also testified that after she finally got Appellant off of her, he said he was sorry in an attempt to make the situation die down. This illustrated Appellant's awareness and acknowledgement of his misconduct. Based on this evidence, and civilian defense counsel's affidavit, in which he stated he felt trial counsel had struck "hard blows, but not foul blows,"[43] trial counsel's closing arguments relating to Ms. Washington telling Appellant "no" and "stop" were not improper and were a reasonable characterization of her testimony drawn from the evidence as a whole.[44]

---

[41] R. at 1184.

[42] R. at 1184.

[43] Aff. of civilian defense counsel, at 2 (quotations removed).

[44] *See United States v. Patrick*, 78 M.J. 687 (N-M. Ct. Crim. App. 2018) (Trial counsel did not commit misconduct but made "reasonable inferences from the evidence," when he claimed male DNA found inside the victim's vagina proved the appellant penetrated the victim. The Court looked at the totality of the DNA expert's testimony to "conclude the comments [were] not a misrepresentation.")

## C. Trial counsel did not commit Misconduct

Appellant argues that trial counsel repeatedly misstated the evidence during his closing and rebuttal arguments. Specifically: (1) that he improperly argued propensity evidence to prove Appellant's guilt; (2) that he improperly commented on Appellant's invocation of a constitutional right; (3) that he maligned Appellant's counsel and argument; (4) that he impermissibly argued that the members would be doing their "duty" and "doing justice" by convicting Appellant; and, (5) that his sentencing argument was improper because he focused on "justice for the victims."

"Improper argument is one facet of prosecutorial misconduct."[45] Prosecutorial misconduct occurs when trial counsel "oversteps the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense."[46] Such conduct "can be generally defined as action or inaction by a prosecutor in violation of some legal norm or standard, e.g., a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon."[47]

The context of trial counsel's comment is key.[48] Challenged argument is reviewed not based "on words in isolation," but "must be viewed within the context of the entire court-martial."[49] "When a trial counsel makes an improper argument during findings, 'reversal is warranted only when the trial counsel's comments taken as a whole were so damaging that we cannot be confident that the members convicted the appellant on the basis of the evidence alone.'"[50]

When the accused objects to an improper argument during his court-martial, we review the issue de novo.[51] In that de novo review, we determine

---

[45] *United States v. Sewell*, 76 M.J. 14, 18 (C.A.A.F. 2017).

[46] *United States v. Fletcher*, 62 M.J. 175, 178 (C.A.A.F. 2005) (quoting *Berger v. United States*, 295 U.S. 78, 84, 55 (1935)).

[47] *United States v. Hornback*, 73 M.J. 155, 160 (C.A.A.F. 2014) (quoting *United States v. Meek*, 44 M.J. 1, 5 (C.A.A.F. 1996)).

[48] *United States v. Carter*, 61 M.J. 30, 33 (C.A.A.F. 2005) ("A prosecutorial comment must be examined in light of its context within the entire court-martial").

[49] *United States v. Baer*, 53 M.J. 235, 238 (C.A.A.F. 2000) (citing *United States v. Young*, 470 U.S. 1, 16 (1985)) (internal quotation marks omitted).

[50] *United States v. Norwood*, 81 M.J. 12, 19 (C.A.A.F. 2021) (quoting *United States v. Andrews*, 77 M.J. at 393, 401-02 (C.A.A.F. 2018)).

[51] *United States v. Voorhees*, 79 M.J. 5, 9 (C.A.A.F. 2019).

whether any error materially prejudiced the appellant's substantial rights under Article 59, UCMJ.[52] On the other hand, "where . . . no objection is made, we review for plain error."[53] "Plain error occurs when (1) there is error, (2) the error is plain or obvious, and (3) the error results in material prejudice to a substantial right of the accused."[54] The burden of proof under a plain error review is on the appellant, [55] and, "the lack of a defense objection is 'some measure of the minimal impact of a prosecutor's improper comment.'"[56]

### 1. Misstatement of the Evidence

Appellant argues that trial counsel committed error by repeatedly misstating the evidence, specifically, Ms. Washington's testimony about what happened during the sexual assault. As stated above, we find trial counsel's arguments were not improper, but a reasonable characterization drawn from the evidence as a whole. Even assuming trial counsel's arguments did constitute error, we find that the error was not plain or obvious, and that Appellant has not demonstrated that his substantial rights were materially prejudiced.

### 2. Propensity Evidence

Appellant argues that trial counsel improperly argued propensity evidence. During the trial counsel's closing argument and rebuttal, civilian defense counsel objected once, when trial counsel stated: "Members, there's few things that we know for absolute certainty in this world. One thing we do know, is that lightning does not strike the same place five times."[57] The military judge sustained the objection and immediately instructed the members to disregard the statement. Having considered trial counsel's statement in the context of the court-martial as a whole, we are convinced that the judge's immediate instruction to the members to disregard the statement was sufficient to address the

---

[52] 10 U.S.C. § 859; *Fletcher*, 62 M.J. at 179.

[53] *Voorhees*, 79 M.J. at 9 (citing *Andrews*, 77 M.J. at 398).

[54] *Fletcher*, 62 M.J. at 179 (citation omitted).

[55] *See United States v. Bungert*, 62 M.J. 346, 348 (C.A.A.F. 2006).

[56] *United States v. Gilley*, 56 M.J. 113, 123 (C.A.A.F. 2001) (quoting *United States v. Carpenter*, 51 M.J. 393, 397 (C.A.A.F. 1999)).

[57] R. 1187.

improper argument. Further, we are confident that the members convicted Appellant based on the evidence alone and not due to the trial counsel's improper statement.[58]

### 3. Appellant's remaining allegations of error do not constitute plain error

We test Appellant's remaining allegations for plain error because they were not objected to at trial. Specifically, we review his assertions that trial counsel improperly commented on Appellant's invocation of a constitutional right, that he maligned Appellant's counsel and argument, that he impermissibly argued that the members would be doing their "duty" and "doing justice" by convicting Appellant, and that his sentencing argument was improper because he focused on "justice for the victims."

Having reviewed Appellant's allegations and considering trial counsel's arguments in context of the court-martial as a whole, we are satisfied that trial counsel did not engage in improper argument and there was no error. Trial counsel's arguments fell within the realm of professional norms expected of officers of the court, were reasonable inferences of the evidence, fair responses to the Defense closing argument, and refrained from commenting on Appellant's constitutional right to remain silent. Even assuming trial counsel's arguments did constitute error, we find that the error was not plain or obvious, and that Appellant has not demonstrated that his substantial rights were materially prejudiced.

### D. The Military Judge did not Abuse His Discretion in Admitting Appellant's Brig Observation and Disciplinary Record

Appellant objected to the Government's introduction of his brig observational and disciplinary reports in its sentencing case. Particularly, Appellant takes issue with the Government's assertion that the records are admissible under Rule for Courts-Martial [R.C.M.] 1001(b)(2) by asserting they were personnel records, unduly prejudicial and inadmissible under Mil.R.Evid. 403 due to the fact that the unadjudicated misconduct allegations would overshadow the offenses for which he was found guilty. The military judge determined that the DD 2713 (Prisoner Observation Report) and DD2714 (Prisoner Disciplinary Report/Action) were admissible under R.C.M. 1001(b)(2) (personal data and character of prior service of the accused), but not R.C.M. 1001(b)(3) (evi-

---

[58] We note that the members acquitted Appellant of seven out of eleven specifications of the charges he faced, which further convinces us that they were not improperly influenced by trial counsel's claim and evaluated each specification individually.

dence of prior convictions of the accused). He also ordered the synopsis of allegations and narrative redacted in each of the DD 2713s and did not allow statements appended to the records.

R.C.M. 1001(b)(2) permits trial counsel to submit evidence of the accused's "character of prior service" from "personnel records of the accused" which are governed by "the regulations of the Secretary concerned."[59] This includes "copies of reports reflecting the past military efficiency, conduct, performance, and history of the accused and evidence of any disciplinary actions."  Per SECNAV M-1640.1, brig observations reports "on DD 2713 provide a means of formally documenting…minor infractions."[60]  Disciplinary reports on "DD 2714" document "serious offenses" or "a pattern of unacceptable behavior such as a series of documented minor infractions in a short time period."[61]  "Copies of all investigations and [disciplinary board] proceedings will become a part of the prisoner's confinement record . . .  [a] disciplinary log must be maintained to record each [disciplinary report] . . . this log information will be populated within the Correctional Management Information System."[62]

We review a military judge's decision to admit sentencing evidence for an abuse of discretion.[63] This standard of review "recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range."[64] Abuse of discretion is a strict standard, calling for more than a mere difference of opinion; it must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous.[65]

In *United States v. Davis,* our superior Court highlighted R.C.M. 1001(b)(2)'s simple definition that personnel records "include [ ] any records made or maintained in accordance with departmental regulations that reflect past military efficiency, conduct, performance, and history of the accused."[66]

---

[59] R.C.M. 1001(b)(2).

[60] SECNAV M-1640.1 § 5102.2.d (May 15, 2019)

[61] *Id.* at § 5102.2.e.

[62] *Id.* at § 5102.3.3.11

[63] *United States v. Stephens*, 65 M.J. 233, 235 (C.A.A.F. 2009).

[64] *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004).

[65] *United States v. White*, 69 M.J. 237, 239 (C.A.A.F. 2010) (citations omitted).

[66] *United States v. Davis*, 44 M.J. 13, 20 (C.A.A.F. 1996) (citing *United States v. Vaughn*, 3 C.M.A. 121, 124 (C.M.A. 1953) ("The commandant of a military disciplinary

Here, like in *Davis*, the military judge found that Appellant's brig disciplinary reports were personnel records in line with R.C.M. 1001(b)(2). Additionally, the military judge appropriately limited the evidence by requiring trial counsel to redact large portions of the reports he believed were inadmissible, which eliminated summaries of the alleged misconduct.[67]

Deference is due to the military judge in this case. Any evidence admitted under R.C.M. 1001(b)(2) is still subject to the balancing test of Mil. R. Evid. 403.[68] Courts give deference to a military judge who articulates the balancing test on the record.[69] Here, the military judge admitted the evidence under R.C.M. 1001(b)(2), appropriately limited the scope of the evidence, and evaluated the evidence under Mil. R. Evid. 403 and placed his reasoning on the record.[70] Consequently, we find the military judge did not abuse his discretion when he admitted the Appellant's brig observation and disciplinary record into evidence.

### III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[71]

The findings and sentence are **AFFIRMED**.



FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

barracks…is at the same time prison warden and the military commander set over the men confined in his penal institution).

[67] R. 1252-52. (Compare Pros. Ex. 10, with Appellate Ex. XXXIV).

[68] *United States v. Jerkins*, 77 M.J. 225, 229 (C.A.A.F. 2018).

[69] *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000); *see also United States v. Halfacre*, 80 M.J. 656, 661-62 (N-M. Ct. Crim. App. 2020).

[70] *See Halfacre*, 80 M.J. at 661-62.

[71] Articles 59 & 66, UCMJ.